FRED D. HEATHER - State Bar No. 110650
fheather@glaserweil.com
JUSTIN P. THIELE - State Bar No. 311787
jthiele@glaserweil.com
GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP
10250 Constellation Boulevard, 19th Floor
Los Angeles, California 90067
Telephone: (310) 553-3000
Facsimile: (310) 556-2920

*Attorneys for Petitioners*
*Cecilia, LLC; Good Stuff, LLC; Morgan Creek Productions, Inc.; and James G. Robinson*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CECILIA, LLC, a Delaware Limited Liability Company; GOOD STUFF, LLC; a Delaware Limited Liability Company; MORGAN CREEK PRODUCTIONS, INC., a Delaware corporation; and JAMES G. ROBINSON, an individual,<br><br>Petitioners,<br><br>v.<br><br>ARMIN AZOD, an individual; RAMEZ ELGAMMAL, an individual; SHANTANU SHARMA, an individual; DONG ZHANG, an individual; and PETER JOHN, an individual,<br><br>Respondents. | CASE NO.: 19-9552<br><br>**PETITION TO CONFIRM ARBITRATION AWARD** |

Petitioners Cecilia, LLC ("Cecilia"); Good Stuff, LLC ("Good Stuff"); Morgan Creek Productions, Inc. ("Morgan Creek"); and James G. Robinson (collectively, "the Cecilia Parties" for purposes of this proceeding) hereby allege the following in support of their Petition to confirm the award in an arbitration originally brought by Armin Azod, Ramez Elgammal, Shantanu Sharma, Dong Zhang, and Peter John (collectively, the "Azod Parties" for purposes of this proceeding) under the Federal Arbitration Act. This petition is made with the support of the attached Memorandum of Points and Authorities and all exhibits.

## Introduction

1. This Petition comes to this Court in an unusual posture based on the danger posed to the Cecilia Parties from the Arbitrator's disregard of the scope of his authority in this case. The Cecilia Parties seek this Court's intervention to confirm an existing final arbitration award and give The Cecilia Parties relief from a runaway arbitration that threatens to exceed the bounds of its jurisdiction.

2. The Cecilia Parties engaged in arbitration with the Azod Parties over the course of two years from 2016 to 2018 for a dispute ultimately arising from a claim of breach of contract, as well as fraud in the execution of that contract. After full discovery was taken and multiple motions for summary disposition were heard and decided by the Arbitrator, the parties participated in a week-long arbitration hearing (the "Hearing") in Los Angeles in November 2018.

3. Subsequent to the Hearing, the Arbitrator issued a Partial Final Award (Corrected) (the "Award") which disposed of the remaining substance of all parties' claims in the arbitration. The Arbitrator found in favor of the Azod Parties (who were in the posture of Claimants in the arbitration) on their breach-of-contract claim solely against Cecilia, LLC, and found against the Cecilia Parties generally (who were in the position of Respondents in the arbitration) on every one of their affirmative defenses and counterclaims. The Award left open for further determination the questions of attorneys' fees, costs, and interest awards.

4. The Cecilia Parties, although disagreeing with the Arbitrator's findings of fact and conclusions of law, nevertheless were willing to abide by the Award and accept that the dispute had been finally resolved. The Azod Parties, however, months after the Award was made final, sought the Arbitrator's approval to brief and seek further resolution of the question of whether Morgan Creek and Mr. Robinson were "jointly and severally liable" for the breach-of-contract award against Cecilia.

5. The Cecilia Parties in response argued to the Arbitrator that, under the doctrine of *functus officio*, the Arbitrator's powers to resolve the substantive disputes between the parties had been exhausted by the Hearing and the Award. In other words, the Azod Parties had presented their *entire case* at the Hearing concerning liability for breach of contract, and the Arbitrator had issued an Award finding liability lay only against Cecilia, necessarily finding that no such liability existed for Morgan Creek or Mr. Robinson.

6. Incredibly, however, the Arbitrator in a subsequent conference stated his newfound understanding that the parties had always sought to postpone the issue of Morgan Creek's and Mr. Robinson's liability for breach of contract until after the Hearing. The Arbitrator then directed the parties to meet and confer and decide on the course of further proceedings to adjudicate the issue.

7. The Cecilia Parties never agreed, at any point during the court of the arbitration, to *separately* adjudicate the issue of breach-of-contract liability between individual parties. Nowhere in the Arbitrator's Award is there a statement or notice of intended reservation of the monumental issue of joint and several liability for the breach-of-contract claim. Nowhere in the record of the arbitration is there any order from the Arbitrator or stipulation by the parties providing that the issues of liability were to be bifurcated. Accordingly, the Award is *final* as to the question of contract liability.

8. The Cecilia Parties therefore seek an order confirming the Award *as final*—even though one petitioning party, Cecilia, is the "loser"—in order to protect

Morgan Creek and Mr. Robinson from unduly burdensome further arbitration proceedings that exceed the scope of the Arbitrator's authority under the *functus officio* doctrine.

## Jurisdiction and Venue

9. This action arises under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq*. Accordingly, this Court has subject-matter jurisdiction over this action as it arises from federal law under 28 U.S.C. § 1331.

10. This Court also has diversity subject-matter jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

11. This Court has personal jurisdiction over the Azod Parties under 9 U.S.C. § 9 because all Respondents were parties to the underlying arbitration.

12. Venue is proper in the Central District of California under 9 U.S.C. § 9 because the Hearing was conducted and the Award was made in this district.

13. Venue is also proper in this district because the Azod Parties initially brought suit in federal court against the Cecilia Parties in this district for the dispute giving rise to the underlying arbitration, and therefore have consented that venue is proper in this district and waived any venue objection.

14. Venue is further also proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within this district.

## Parties

15. Petitioner Cecilia, LLC, is a Delaware limited liability company with its principal place of business in Maryland.

16. Petitioner Good Stuff, LLC, is a Delaware limited liability company with its principal place of business in Maryland.

17. Petitioner Morgan Creek Productions, Inc., is a Delaware corporation with its principal place of business in Maryland.

1. Petitioner James G. Robinson is an individual and a citizen of Maryland.
2. On information and belief, Respondent Armin Azod is an individual and a citizen of California.
3. On information and belief, Respondent Ramez Elgammal is an individual and a citizen of Tennessee.
4. On information and belief, Respondent Shantanu Sharma is an individual and a citizen of California.
5. On information and belief, Respondent Dong Zhang is an individual and a citizen of California.
6. On information and belief, Respondent Peter John is an individual and a citizen of the United Kingdom.

**Factual and Procedural Background**

24. On October 15, 2014, Cecilia and all of the Azod Parties executed the Asset Purchase Agreement ("APA") to acquire certain assets of the Azod Parties. The APA is attached hereto as **Exhibit 1**. Namely, Cecilia acquired all membership interest of the Azod Parties' jointly-owned entity Novoform, LLC ("Novoform") and all of Novoform's assets—in particular, a United States patent application referred to as PCT Application No. PCT/US2014/056111 (the "'111 Application") (collectively, the "Acquired Assets").

25. The technology underlying the '111 Application consisted of a method for the conversion of methane to methanol in a single-step catalysis process. The Azod Parties prior to and subsequent to execution of the APA—in particular, Azod individually—made numerous representations about the state of development of the technology, its efficacy, its capacity to be commercially lucrative, and its advancement over the prior art in the field.

26. In exchange for the Acquired Assets, Cecilia agreed to pay the Azod Parties $1,000,000 in three scheduled payments, $65,000 toward Zhang's development work on the technology spread across twelve months, a defined schedule

of "expense reimbursements" totaling $115,329, and royalties on any future commercial exploitation of the technology.

27. Cecilia made the initial round of payments under the APA. In early 2015, however, Cecilia's principal member, Mr. Robinson, became concerned that the scope of research and development the Azod Parties were demanding on the technology were far greater in terms of time and money than he had been led to believe. The Azod Parties repeatedly requested that Cecilia pay ever-growing research and development bills to themselves and to Argonne National Laboratories ("Argonne"), a federally-owned research facility in Illinois. Mr. Robinson concluded that he had been misled by Respondents about the market-readiness of the technology, and declined to be goaded into throwing Cecilia's good money after bad.

28. The second round of purchase price payments under the APA were due September 30, 2015, and were not made. Cecilia declined to make any further payments on the APA for the Acquired Assets which it had learned were worthless.

29. On January 20, 2016, the Azod Parties (except for Elgammal) filed a complaint in this Court for fraud, breach of contract, breach of the covenant of good faith and fair dealing, unfair competition claims, and injunctive relief against the current Cecilia Parties (except for Good Stuff). *Azod v. Robinson*, No. 16-cv-440, Dkt. No. 1 (C.D. Cal. Jan. 20, 2016).

30. On April 7, 2016, the active Cecilia Parties filed a motion to compel arbitration based on Section 21 of the APA, which provides in relevant part:

> Except for any claim for injunctive relief arising out of a breach of section 15 of this Agreement, the Parties agree to confidentially arbitrate in the State of Maryland through JAMS … any and all disputes or claims arising out of or related to the validity, enforceability, interpretation, performance or breach of this Agreement, whether sounding in tort, contract, statutory violation, or otherwise, or involving the construction or application or any of the terms, provisions, or conditions of this Agreement.

31. On May 10, 2016, the Court in *Azod v. Robinson* granted the motion to compel arbitration, and ordered the parties to "confidentially arbitrate any and all claims pertaining to the" APA. *Azod v. Robinson*, No. 16-cv-440, 2016 WL 6603950 at *2 (C.D. Cal. May 10, 2016) (Walter, J.). This order was made pursuant to the Federal Arbitration Act. *Id.*, at *1.

32. Subsequently, on September 1, 2016, the Azod Parties (except for Elgammal) filed a Demand for Arbitration (the "Demand") with JAMS in Maryland, presenting for arbitration claims of breach of contract, fraud, declaratory judgment, and awards of damages, fees, and costs under the APA. The Demand is attached hereto as **Exhibit 2**. The Demand stated its claims against all the Cecilia Parties, including Good Stuff.

33. The Demand alleged that Morgan Creek, Mr. Robinson, Cecilia, and Good Stuff were all "alter egos" of each other, and sought recovery for its claims jointly and severally against all parties.

34. The Cecilia Parties (as Respondents in the arbitration) filed their response and asserted counterclaims for fraud and breach of the APA on September 19, 2016.

35. The parties appointed JAMS neutral Hon. Benson Legg (Ret.), a former chief judge of the District of Maryland, as a mutually acceptable Arbitrator.

36. On September 21, 2017, the Azod Parties filed an amendment to the Demand, naming Elgammal as an additional Claimant to the arbitration (the "Amended Demand"). The Amended Demand is attached hereto as **Exhibit 3**.

37. The parties exchanged written discovery, took depositions, and filed discovery-dispute motions, which were eventually resolved.

38. On December 8, 2017, the Azod Parties filed a Motion for Summary Disposition concerning Petitioners' affirmative defenses and counter-claims. The Cecilia Parties then filed a cross Motion for Summary Disposition on their counterclaims for fraud and breach, and against the Azod Parties' fraud claim, on

December 21, 2017. Finally, the Azod Parties filed a second Motion for Summary Disposition on their claim for breach of contract on May 14, 2018.

39. On September 29, 2018, the Arbitrator decided all three motions for summary disposition. The Arbitrator granted the Cecilia Parties' motion in part by dismissing the Azod Parties' fraud claim. The Arbitrator also dismissed some of the Cecilia Parties' affirmative defenses in the Azod Parties' favor, but otherwise denied the motions for summary disposition.

40. The parties agreed that the merits Hearing would be conducted in Los Angeles, California, instead of either Maryland or the District of Columbia, notwithstanding the forum-selection clause of the APA.

41. Accordingly, from November 6 to 10, 2018, the Arbitrator held the merits Hearing at the JAMS Resolution Center in Los Angeles. The Azod Parties presented evidence regarding their breach-of-contract claim, and the Cecilia Parties presented evidence regarding their counterclaims for breach of contract and fraud. Live witness testimony was taken in the presence of the Arbitrator.

42. After the close of the Hearing, the Arbitrator issued to the parties a Partial Final Award on February 7, 2019, containing findings of fact, conclusions of law, the award, and a list of issues reserved for further determination. Later on the same day, the Arbitrator issued the Partial Final Award (Corrected), which contained minor typographical corrections to the previous order and is referred to in this Petition as the operative Award. The Award is attached hereto as **Exhibit 4.**

43. On the Cecilia Parties' breach of contract counterclaim and fraud counterclaim, the Award found in the Azod Parties' favor.

44. On the Azod Parties' breach of contract claim, the Award stated:

> I find that the APA is a valid contract, unbreached by Claimants [the Azod Parties]. **As a result, I will award judgment in favor of Claimants [the Azod Parties] against Cecilia, LLC in the amount stipulated by the parties** on November 18, 2018. That amount totals $856,886. In a separate order, I will direct counsel to submit a proposed form of order implementing this decision. *Inter*

> *alia.*, counsel shall address the appropriateness under Maryland law of awarding pre and post-judgment interest.

Ex. 4, Award, at 64–65 (emphasis added).

45. Following these findings, the Award continued:

> **Claimant's** [the Azod Parties]**, as Prevailing Parties Seek an Award of Costs and Attorneys' Fees**
>
> Section 21 (Dispute Resolution) of the APA provides: "The parties further agree that the arbitrator of any such dispute may, in the arbitrator's discretion, award money damages to the prevailing Party, including the costs of the arbitration and attorneys' fees, as well as permanent injunctive relief."
>
> **Cost of the Arbitration**
>
> I hereby award the costs of the arbitration to Claimants. JAMS has calculated those costs as $130,802.02. In a separate order, I will schedule briefing and oral argument on the following issues: (i) the appropriateness under Maryland law of awarding post-judgment interest on the award, and (ii) whether the obligation should be imposed on Cecilia, LLC only or on Respondents [the Cecilia Parties] jointly and severally.
>
> **Attorneys' Fees**
>
> I will issue an order scheduling oral argument by telephone conference call on the following issues: (i) the appropriateness of awarding attorneys' fees to Claimants, (ii) whether to award to Claimants the costs of the arbitration apart from payment to JAMS, and (iii) whether any award should be imposed on Cecilia, LLC only or on Respondents jointly and severally.
>
> The above is hereby **SO ORDERED this 7th day of February 2019.**

Ex. 4, Award, at 65.

46. Accordingly, the Award resolved with finality the Azod Parties' breach-of-contract claim by issuing an award *only* against Cecilia and therefore finding *no liability* against Morgan Creek, Mr. Robinson, or Good Stuff. The Award left only certain discrete issues for further determination: recovery of attorneys' fees, costs, and interest; as well as whether that attorneys' fees, costs, and interest award (if any) should be imposed on Cecilia or also on Good Stuff, Morgan Creek, and Mr.

Robinson jointly and severally. The Award reserves no other issues for further determination.

47. On March 19, 2019, the Arbitrator issued Scheduling Order 25, which directed the Azod Parties to submit a brief regarding "the remaining issues, including allocation of attorneys' fees and the costs of the arbitration" by April 15, 2019. Scheduling Order 25 is attached hereto as **Exhibit 5.**

48. On April 15, 2019, the Azod Parties submitted "Claimants' Motion and Memorandum in Support of Motion for Joint and Several Liability, and Allocation of Attorneys' Fees, Costs, and Interest" (the "Joint and Several Liability Motion"). Aside from arguing for the recovery of attorneys' fees and costs, this motion argued that liability for the breach-of-contract award should be extended jointly and severally to Morgan Creek and Mr. Robinson, on grounds of equitable estoppel and alter-ego liability. Relevant portions of the Joint and Several Liability Motion is attached hereto as **Exhibit 6.**

49. On May 20, 2019, the Cecilia Parties submitted their opposition to the Joint and Several Liability Motion (the "Opposition"). The Cecilia Parties argued in the Opposition that 1) the Award totally and finally resolved the issue of breach-of-contract liability; 2) the doctrine of *functus officio* therefore bars any further consideration or ruling by the Arbitrator of breach-of-contract liability; 3) neither did the parties agree nor did the Arbitrator order ahead of the Hearing that "joint and several liability" would be reserved for decision after the Award, nor was such a reservation of issues mentioned once during the course of the Hearing; and 4) even if the issue could be properly considered, controlling Maryland law does not allow piercing of Cecilia's corporate veil nor application of equitable estoppel. The Opposition is attached hereto as **Exhibit 7.**

50. The Azod Parties filed a reply brief on June 17, 2019. The parties then conducted a telephone conference with the Arbitrator to discuss the Joint and Several Liability Motion on August 27, 2019. The Cecilia Parties strenuously argued that the

Arbitrator lacked jurisdiction and authority to decide the issue of breach-of-contract liability further. Among other points, the Arbitrator stated his opinion that the Award left open the issue of further breach-of-contract liability and his intention that the arbitration should continue on this issue.

51. On September 17, 2019, the Arbitrator issued Scheduling Order 27. Scheduling Order 27 is attached hereto as **Exhibit 8.** This Order stated that:

> The [Award] did not decide whether any Respondent [the Cecilia Parties] other than Cecilia is jointly and severally liable to Claimants [the Azod Parties] for breach of contract. The hearing was not closed. The liability of [] Robinson, Morgan Creek, and Good Stuff for breach of the APA was **expressly reserved** for further proceedings.

Ex. 8, Scheduling Order 27, at 3 (emphasis added). However, the Order does not reference when, where or in what document, hearing, or conference this issue was "expressly reserved for further proceedings." In truth, there is no such express reservation.

52. Scheduling Order 27 then stated that the section of the Award entitled "**Attorneys' Fees**" was *actually* a reservation of the issue of substantive joint and several liability for *breach of contract*: "The [Award] speaks of 'any award' not just an award of attorneys' fees and costs." Ex. 8, Scheduling Order 27, at 5. This post-facto revision of the Award conflicts with the plain language of the document and is not a reasonable reading of the text.

53. The Order concluded:

> 1. The [Award] left open for later resolution the potential joint and several liability of Respondents Robinson, Morgan Creek, and Good Stuff for breach of contract.
>
> 2. Counsel shall meet and confer and, by **September 25, 2019**:
>
>> a. submit a joint list of issues to be decided and a discovery plan.
>>
>> b. propose a briefing schedule for any necessary supplemental briefing.

> c. advise whether an evidentiary hearing is necessary, or whether the issues can be decided based on the written record in combination with oral argument.
>
> d. advise whether the parties can agree that Respondents' [here, Petitioners] continued participation does not constitute a waiver of their position that the issue of the joint and several liability for the unpaid balance due under the APA was foreclosed by the [Award].
>
> e. any other matters.

Ex. 8, Scheduling Order 27, at 6.

54. On September 25, 2019, the parties met and conferred as directed by the Arbitrator. The Cecilia Parties maintained their position that the Arbitrator was *functus officio* and without jurisdiction to re-try the issue of breach-of-contract liability. The Azod Parties stated their desire to pursue joint-and-several liability against Mr. Robinson and Morgan Creek, and their belief that the issue could be decided on the basis solely of the written record. Such a procedure would necessarily deprive the Cecilia Parties of a fair and full hearing on the issue of Mr. Robinson's and Morgan Creek's liability with the benefit of live witness testimony. The parties memorialized their positions in a Joint Status Report dated September 25, 2019, and submitted to the Arbitrator. The Joint Status Report is attached hereto as **Exhibit 9.**

55. On September 30, 2019, the parties held another telephone conference with the Arbitrator to discuss the Joint Status Report. The Arbitrator repeated his opinion that authority existed to decide liability as to Mr. Robinson and Morgan Creek, and directed the parties to meet and confer further on the course of the proceedings.

56. To avoid needless, pointless, groundless, and highly prejudicial litigation in arbitration, the Cecilia Parties then brought this Petition to confirm the Award as final.

**The Award Should be Confirmed as Final as to Breach of Contract**

57. Under 9 U.S.C. § 9, within one year after an arbitration award is made, any party to an arbitration may apply for a court order confirming the award.

58. The Award is facially and manifestly final as to breach of contract liability. The Azod Parties were afforded a full and fair opportunity to present evidence and argue their claims. The resulting Award rendered a finding of liability for breach of the APA as to Cecilia, LLC, only. The Award is "Partial" in that it *expressly* reserved for further determination the issue of attorneys' fees, costs, and interest. The Award did *not* expressly reserve the issue of "joint and several liability" as to Morgan Creek, Mr. Robinson, or Good Stuff.

59. Under the doctrine of *functus officio*, "once an arbitrator has made and published a final award his authority is exhausted and he is *functus officio* and can do nothing more in regard to the subject matter of the arbitration." *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982) (citing *La Vale Plaza, Inc. v. R. S. Noonan, Inc.*, 378 F.2d 569, 572 (3d Cir. 1967)). Accordingly, any arbitration award which is considered final is not subject to further consideration by the arbitrator as to any issues resolved therein.

60. Even though the Award leaves non-liability issues unresolved for future determination, and is titled as a "Partial Final Award," this Court may still confirm the Award because it totally resolves a discrete issue with finality—namely, the issue of breach-of-contract liability. *New United Motor Mfg., Inc. v. United Auto Workers Local 244*, 617 F. Supp. 2d 948, 956–57 (N.D. Cal. 2008) (citing *Trade & Transport, Inc. v. Natural Petrol. Charterers, Inc.*, 931 F.2d 191, 195 (2d Cir. 1991)).

61. The Award must be judged as final by its own words. The Arbitrator's gratuitous post-Award comments cannot be used to rewrite the Award. Even if there was an error or ambiguity in the Award, JAMS Comprehensive Arbitration Rules and Procedure Rule 24(k) provides that the time to make "computational, typographical or other similar error in an Award" is within seven days from the issuance of the award. That time has long since passed and, in any event, the Arbitrator already took advantage of this provision in issuing the Partial Final Award (Corrected). The Award must be interpreted by its simple text.

62. The Cecilia Parties bring this Petition now to confirm the Award and resolve the uncertainty which may subject it to lengthy, costly, and needless further litigation of this already-resolved issue before the Arbitrator. The Court, in confirming the Award as final, has the power to end this uncertainty.

\* \* \*

WHEREFORE, Petitioners Cecilia, Good Stuff, Morgan Creek, and Mr. Robinson respectfully request that the Court enter an Order granting this Petition, confirming the Award as final, and entering judgment thereon that Cecilia is liable for breach of the APA and that Morgan Creek and Mr. Robinson are not liable for breach of the APA.

DATED: November 6, 2019

GLASER WEIL FINK HOWARD AVCHEN & SHAPIRO LLP

By: /s/ Fred D. Heather
FRED D. HEATHER
JUSTIN P. THIELE
*Attorneys for Petitioners Cecilia, LLC; Good Stuff, LLC; Morgan Creek Productions, Inc.; and James G. Robinson*