**EXHIBIT 1**

---

## ASSET PURCHASE AGREEMENT

---

DATED AS OF OCTOBER 15, 2014

BY AND BETWEEN

NOVOFORM TECHNOLOGIES, LLC

AND

CECILIA, LLC

## ASSET PURCHASE AGREEMENT

This **ASSET PURCHASE AGREEMENT** ("<u>Agreement</u>"), is made this <u>15th</u> day of October, 2014, by and between Novoform Technologies, LLC ("**Novoform**"), the undersigned members of Novoform ("**Members**") (Novoform and Members being jointly and severally referred collectively as "**Seller**") and Cecilia, LLC (referred to herein collectively as "**Cecilia**"), with reference to the following RECITALS.  The parties to this agreement may be referred to individually as a "**Party**" or collectively as "**Parties**."

A.  **WHEREAS**, the Parties wish to enter into this Agreement for the purchase of Novoform and certain assets owned by Novoform, as described herein.

B.  **WHEREAS**, Cecilia desires to purchase the assets identified on <u>Exhibit A</u> attached hereto (the "**Acquired Assets**").

C.  **WHEREAS**, Seller desires to sell the Acquired Assets upon closing to Cecilia.

**NOW**, **THEREFORE**, in consideration of the recitals and of the respective covenants, representations, warranties and agreements herein contained, and intending to be legally bound hereby, the Parties hereto hereby agree as follows:

1.  <u>Agreement to Sell</u>.  Effective as of the Closing Date (as defined in Section 5 hereof), Seller shall grant, sell, convey, assign, transfer and deliver to Cecilia, upon and subject to the terms and conditions of this Agreement, all right, title and interest of Seller in and to the Acquired Assets.  Seller agrees promptly to do all things, and sign all documents, requested by Cecilia in pursuance of the provisions of this Section 1 at Seller's expense, including, but not limited to, the assignments attached hereto as Exhibit C and Exhibit D.

2.  <u>Agreement to Purchase</u>.  At the Closing, Cecilia will purchase or otherwise acquire Novoform and all interests in Novoform, which the Parties agree will entitle Cecilia to full, total and complete ownership, control and dominion over the Acquired Assets and all other assets of Novoform.  Cecilia shall purchase the Acquired Assets from Seller, upon and subject to the terms and conditions of this Agreement and in exchange for delivery of the Purchase Price (hereinafter defined in Section 3 hereof) to Seller.  Cecilia shall not assume or be responsible for any liabilities or obligations of the Seller in connection with the Acquired Assets.

3.  <u>Purchase Price</u>.  As consideration for the Acquired Assets, Cecilia shall pay to Seller an aggregate purchase price of One Million Dollars ($1,000,000) (the "**Purchase Price**"), which shall be payable in three separate payments directly to the Members on the dates and in the amounts as set forth in Exhibit B, which initial payment ("**Closing Payment**") shall be payable at the closing of this transaction ("**Closing**"), which Closing will occur not later than thirty (30) days from the date of this Agreement or as otherwise agreed by the Parties.  Said Purchase Price shall not include certain expense reimbursements ("**Expense Reimbursements**") as set forth in Exhibit B, which shall be payable by

Cecilia. Cecilia shall pay Members the Purchase Price and the Expense Reimbursements as set forth on Exhibit B attached hereto and made a part hereof.

4.  **Royalties**.  As additional consideration for the Acquired Assets, for the ten (10) year period after Closing ("**Royalty Period**"), Ramez Elgammal and Armin Azod will be entitled to receive, in the aggregate, a royalty equal to five percent (5%) of the net profits generated from the Acquired Assets ("**Royalty**"), split equally between them, after recoupment by Cecilia of the Purchase Price and all other reasonably documented monies expended by Cecilia related to the acquisition and operation of Novoform during such ten (10) year period. The duration of this Royalty Period shall not exceed ten (10) years. For the avoidance of doubt, net profit ("**Net Profit**") means, with respect to the Acquired Assets, the gross amount (*i.e.,* the actual amount of revenue by sales) invoiced by Cecilia or its Affiliates or Sublicensees, as the case may be, on sales, milestone payments, royalties, license fees, or other dispositions of such Acquired Assets to Third Parties, <u>less</u>:

    (A)    portions of invoiced amounts written off by Cecilia, its Affiliates or Sublicensees as uncollectible in accordance with their normal accounting practices (provided that if any such written-off amounts are subsequently collected, such amounts shall be included in Net Sales when collected); and

    (B)    the following deductions, to the extent standard and customary and incurred in accordance with Cecilia or its Affiliates or Sublicensees usual practices, as generally applied across its business:

        (i)    rebates, quantity, trade and cash discounts, and other usual and customary discounts to customers;

        (ii)    charge-back payments and rebates granted to managed health care organizations or to national, state or local governments, their respective agencies, purchasers or reimbursers, adjustments arising from consumer discount programs or other similar programs;

        (iii)    retroactive price reductions, credits or allowances granted upon rejections or returns of Acquired Assets, including for recalls or damaged goods;

        (iv)    compulsory payments and rebates made or granted to government entities with respect to sales of Acquired Assets;

        (v)    freight, postage, shipping and insurance charges for delivery of Acquired Assets; and

        (viii)    sales taxes, excise taxes, use taxes, value-added taxes, import/export duties or other governmental charges with respect to Acquired Assets, excluding income taxes.

The Royalty will be paid to one or more accounts to be determined by Elgammal and Azod as set forth in Exhibit E.

Cecilia agrees to pay all fees to the United States Patent and Trademark Office (or foreign patent office) that are due after the Closing Date to keep the PCT Application and any pending patent applications, or issued patents in any country claiming priority to the PCT Application in force.

5.    **Closing**.  The closing (the "**Closing**") of the sale shall take place and be effective on October 15, 2014 or such other date as the Parties may mutually agree in writing.  The date of the Closing is sometimes herein referred to as the "Closing Date."

6.    **Enforcement of Cecilia's Rights; Indemnification of Seller**.  If Cecilia, as an assignee pursuant to this Agreement, desires to enforce its rights against a third party infringer, or if Cecilia (or its subsidiaries or affiliates) is a named Party to any legal action involving a dispute concerning the Acquired Assets ("**Action**"), Cecilia shall notify Seller in writing, and Seller shall cooperate and provide Cecilia with any reasonably requested assistance necessary to support Cecilia's claims or defenses in the Action, including but not limited to joining in the Action as a named Party.  Cecilia agrees to reimburse Seller for reasonable fees and costs incurred in connection with its cooperation and assistance.  Cecilia shall control decisions made in connection with any Action concerning the Acquired Assets.  For the avoidance of doubt, following the Closing, Novoform shall be considered an affiliate of Cecilia.

7.    **Seller Deliveries at Closing**.  At the Closing, and subject to the terms and conditions herein contained, Seller shall deliver to Cecilia the following:

      (a)    such bills of sale with covenants of warranty, assignments, endorsements, and other good and sufficient instruments and documents of conveyance and transfer, in form reasonably satisfactory to Cecilia, as shall be necessary and effective to transfer and assign to, and vest in, Cecilia all of Seller's right, title and interest in and to the Acquired Assets;

      (b)    all necessary consents and approvals of all persons, entities and governmental agencies and authorities required to sell and transfer the Acquired Assets free of Liens and consummate the transactions described in and contemplated by this Agreement with respect to the Acquired Assets; and

      (c)    such other documents and instruments as may be reasonably requested by Cecilia and its counsel in connection with Seller's performance of its covenants, duties, and obligations described in this Agreement.

8.    **Cecilia Deliveries at Closing**.  At the Closing, and subject to the terms and conditions herein contained, Cecilia shall deliver to Seller the following:

    (a)    the Closing Payment; and

    (b)    such other documents and instruments as may be reasonably requested by Seller and its counsel in connection with Cecilia's performance of its covenants, duties, and obligations described in this Agreement.

**9.**     <u>**Representations and Warranties of Seller; Disclaimer of Warranties; Limitation of Liability**</u>.

Seller represents and warrants to Cecilia as follows:

    (a)    Novoform is a limited liability company, duly organized, validly existing and in good standing under the laws of the State of California, with full power and authority to conduct its business as it is now being conducted, to own or use the properties and assets that it purports to own or use, and to perform all its obligations under this Agreement.

    (b)    Novoform and the Members own and have the power and right to convey good and marketable title to their respective interests and all rights related to the Acquired Assets, free and clear of any encumbrances, liens, claims, charges, liabilities, pledges, leases, security interests, licenses, balance due under any lease or financing arrangements and rights and claims of any person or entity of any kind, nature, or description whatsoever, and after Closing, Cecilia (or Novoform as controlled by Cecilia) shall have full, total, exclusive, complete and unencumbered ownership, control and dominion over the Acquired Assets and all other assets of Novoform.

    (c)    Novoform and each Member has the full right, power and authority to enter into this Agreement and to sell, assign, convey and transfer his or its Interests to Cecilia.

    (d)    This Agreement represents the valid and binding and enforceable obligations of Novoform and each Member, enforceable against Novoform and each Member in accordance with its terms.

    (e)    The assignment and transfer to Cecilia of the interests by each Member and the sale to Cecilia of the Acquired Assets will not violate any agreements binding upon Novoform or any Member, or any applicable laws or other governmental rules or regulations.

    (f)    To the best of their knowledge, Novoform and each Member is not aware of any facts, events or circumstances relating specifically to Novoform or the Acquired Assets which may have a material adverse impact on Novoform or the Acquired Assets, their business prospects or financial condition.

(g)     Novoform and each Member agree to execute and deliver such further documents and instruments as are reasonably required to assign, convey and transfer their interests and ownership of the Acquired Assets to Cecilia and to accomplish the purposes of this Agreement.

**No Warranties**.  EXPCEPT AS OTHERWISE EXPRESSLY SET FORTH IN THIS PARAGRAPH 9, SELLER MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, CONCERNING THE PATENT RIGHTS GRANTED HEREUNDER, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NONINFRINGEMENT, VALIDITY OF PATENT RIGHTS CLAIMS, WHETHER ISSUED OR PENDING, AND THE ABSENCE OF LATENT OR OTHER DEFECTS, WHETHER OR NOT DISCOVERABLE, AND HEREBY DISCLAIMS THE SAME.    SPECIFICALLY, AND NOT TO LIMIT THE FOREGOING, SELLER MAKES NO WARRANTY OR REPRESENTATION (i) REGARDING THE VALIDITY OR SCOPE OF ANY OF THE CLAIM(S), WHETHER ISSUED OR PENDING, OF ANY OF THE PATENT RIGHTS, AND (ii) THAT THE EXPLOITATION OF THE PATENT RIGHTS OR ANY PRODUCT OR PROCESS WILL NOT INFRINGE ANY PATENTS OR OTHER INTELLECTUAL PROPERTY RIGHTS OF ANY THIRD PARTY.

**Limitation of Liability**.  IN NO EVENT SHALL EITHER PARTY OR ANY OF ITS AFFILIATES OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS BE LIABLE TO THE OTHER PARTY OR ANY OF ITS AFFILIATES OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES AND AGENTS FOR INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES OF ANY KIND ARISING IN ANY WAY OUT OF THIS AGREEMENT OR THE LICENSE GRANTED HEREUNDER, HOWEVER CAUSED AND ON ANY THEORY OF LIABILITY, INCLUDING WITHOUT LIMITATION ECONOMIC DAMAGES OR INJURY TO PROPERTY OR LOST PROFITS, REGARDLESS OF WHETHER EITHER PARTY SHALL BE ADVISED, SHALL HAVE OTHER REASON TO KNOW, OR IN FACT SHALL KNOW OF THE POSSIBILITY OF THE FOREGOING.

10.    **Representations and Warranties of Cecilia.**

Cecilia represents, warrants and acknowledges to Seller as follows:

(a)     This Agreement constitutes the legal, valid and binding obligation of Cecilia, enforceable against Cecilia in accordance with its terms.  Cecilia has the absolute and unrestricted right, power and authority to execute and deliver this Agreement and to perform its obligations under this Agreement and such action has been duly authorized by all necessary corporate action.

5

11. **General Release**

By signing below, Seller and individual Members hereby releases Cecilia, its affiliates, and Cecilia's predecessors-in interest; and any and all members, officers, directors, agents and employees of Cecilia, its affiliates, and Cecilia's predecessors-in interest (collectively, the "**Cecilia Released Parties**"), from all claims, actions, causes of action, damages of any kind, demands, debts, defenses, grievances, obligations, contracts, promises, judgments, expenses, interests, reversionary interests, costs, attorneys' fees, compensation, and liabilities, known, unknown or should have known, whatsoever which Seller and/or individual Members now has, has had, or may have, whether the same be at law, in equity, or mixed, or in any way arising from or relating to any act, occurrence, or transaction occurring from the beginning of time up to and including the date of this Agreement in business or other relationships. Seller and Members hereby further release Novoform, its affiliates, and Novoform's predecessors-in interest; and any and all members, officers, directors, agents and employees of Novoform, its affiliates, and Novoform's predecessors-in interest (collectively, the "**Novoform Released Parties**"), from all claims, actions, causes of action, damages of any kind, demands, debts, defenses, grievances, obligations, contracts, promises, judgments, expenses, interests, reversionary interests, costs, attorneys' fees, compensation, and liabilities, known, unknown or should have known, whatsoever which Seller and/or individual Members now has, has had, or may have, whether the same be at law, in equity, or mixed, or in any way arising from or relating to any act, occurrence, or transaction occurring from the beginning of time up to and including the date of this Agreement in business or other relationships. This is a General Release.

12. **Sales, Transfer and Documentary Taxes, Etc.; Reports; Audit**

Each Party shall pay all federal, state and local sales, documentary and other transfer taxes, if any, due as a result of the purchase, sale or transfer of the Acquired Assets in accordance herewith imposed on such Party.

Cecilia shall deliver reports to Seller twice a year (*e.g.,* January 1st and July 1st) during the Royalty Period and within thirty (30) days after the end of each period, such that the first report shall be due on January 31, 2015. Each report shall be certified as correct by Cecilia and shall contain at least the following information pertinent to a royalty accounting hereunder for the immediately preceding reporting period:

    (a)    the number of products sold by Cecilia and its sublicensees throughout the world;

    (b)    the amounts billed, invoiced and received by Cecilia and its sublicensees for each product and total billings or payments due or made for all products;

(c)     calculation of net sales for the applicable reporting period, including an itemized listing of permitted offsets and deductions;

(d)     total royalties payable on net sales in U.S. dollars, together with any applicable exchange rates used for conversion; and

(e)     any other payments due to Seller under this Agreement.

If no amounts are due to Seller for any Reporting Period, the report shall so state.

Seller may, at its own expense, cause an audit to be made by an independent certified public accounting firm ("**CPA**") of Cecilia's relevant records for the sole purpose of assessing Cecilia's compliance with its royalty payment obligations pursuant to this Agreement. The CPA will provide to both Parties a written report detailing its conclusions and the basis therefor. If Seller concludes that Cecilia has under-reported net sales, Seller shall give written notice to Cecilia of its conclusion, and Seller and Cecilia shall endeavor in good faith to resolve any differences between their respective calculations. Cecilia shall make prompt adjustment to compensate for any errors or omissions disclosed by any such audit that it agrees have occurred.

13.     **Sponsored Research.** For a period of one (1) year from the date of this Agreement, Cecilia shall sponsor research conducted by Dr. Dong Zhang ("**Sponsored Research**"). In consideration of said Sponsored Research, Cecilia shall pay to Zhang the sum of Sixty-Five Thousand Dollars ($65,000.) paid in equal monthly installments over the period of one year.

14.     **Non-Competition.** Seller agrees that, for a period of five (5) years following the Closing Date, Seller will not file any patent applications with subject matter that is related or substantially related to the subject matter disclosed in the PCT patent application set forth in Exhibit A with the express consent of Cecilia. Seller further agrees that they will work with Cecilia in good faith to commercialize the technology disclosed in the PCT patent application set forth in Exhibit A and will not disclose any information, know-how, or confidential information related to the subject matter disclosed in the PCT patent application set forth in Exhibit A to any third party without written permission from Cecilia to do so. Should Cecilia request additional services from Seller in connection with the commercialization of the technology, compensation for such services shall be negotiated in good faith between Cecilia and Seller or the individual Member whose services are requested.

15.     **Confidentiality.** Seller acknowledges that Seller had access to, and possessed confidential business information and proprietary information about the Acquired Assets, ("**Confidential Information**"). Seller agrees not to: (i) disclose any Confidential Information to any third party(ies); or (ii) use any Confidential Information, for any purpose, under any circumstances. Seller further warrants and represents that as of the date of the Execution of this Agreement, (i) Seller has not disclosed any Confidential Information to any third party(ies); (ii) Seller has not used any Confidential Information,

for any unauthorized purpose contrary to the best interests of Cecilia; and (iii) Seller has destroyed any and all Confidential Information in its possession or under its control.  The Parties agree that both the fact and existence of this Agreement, and the terms and conditions of this Agreement, are absolutely confidential, and the Parties shall not disclose, discuss or otherwise disseminate the fact or existence of this Agreement, or the terms or conditions of this Agreement, to any person or entity, except: (1) to their employees, attorneys, accountants, lenders, financial consultants, investors, analysts, insurers, owners, partners, members, shareholders, officers and directors; (2) to the extent required by a binding court order or other compulsory legal process; (3) to the extent required by a lawful subpoena or lawful discovery request served on any of the Parties; (4) to the extent compelled to do so by governmental agencies or others as may be required by law, regulation, ordinance, statute or order; (5) to any federal, state or local taxing authority; or (6) as required by federal or state securities reporting and disclosure laws, statutes, rules and regulations, including but not limited to, the Securities and Exchange Commission disclosure requirements.  In the event that any of the Parties are required to disclose any of the terms or conditions of this Agreement to any third party pursuant to a subpoena, discovery request or other compulsory legal process (pursuant to subparagraphs (2), (3) or (4), above), they shall, to the fullest extent reasonably possible, inform the other Parties and their attorneys in writing of their doing so at least ten (10) days in advance of such disclosure, and permit the other Parties to challenge such disclosure, unless they are legally prevented from doing so.

16. **Contents of Agreement; Parties in Interest; Etc.**  This Agreement sets forth the entire understanding of the Parties hereto with respect to the transactions contemplated hereby.  Any and all previous agreements and understanding between and among the Parties, regarding the subject matter hereof, whether written or oral, are superseded by this Agreement.

17. **Assignment.**  This Agreement may not be assigned by either Party without the written consent of the other Party.  Any permitted assignee shall assume all obligations of its assignor under this Agreement.  Any purported assignment in violation of this paragraph shall be void.

18. **Amendments and Waiver**.  Any term or provision of this Agreement may be amended or waived at any time by a written instrument duly executed by both Parties.

19. **Notices.**  Any notice, request, information, or other document to be given hereunder to any of the Parties by any other Party shall be in writing; shall be given by hand delivery, certified or registered U.S. mail, or a private overnight courier service, in each case providing evidence of receipt as part of its service; addressed to Cecilia's or Seller's respective addresses appearing below; and shall be deemed given (a) on the date of receipt or refusal, if hand delivered, (b) one (1) business day after deposit with a private overnight courier service, or (c) two (2) business days after deposit in the U.S. mails if mailed as certified or registered mail.  Notices shall be given:

If to the Seller:

> Novoform Technologies, LLC
> Attn: Armin Azod
> 1801 Century Park East, 24th Floor
> Los Angeles, CA 90067

If to the Cecilia:

> Cecilia, LLC
> Attn: Mr. James Robinson
> 10 East Lee Street
> Suite 2705
> Baltimore, MD 21202

with a copy to:

> Fanelli Haag & Kilger PLLC
> Attn:  Dean L. Fanelli, Ph.D.
> 1300 I Street NW, Suite 850 West
> Washington, DC 20005

or to such other address as the addressee may have specified in a notice duly given to the sender as provided herein.

20. **Governing Law**.  This Agreement shall be governed by and interpreted and enforced in accordance with the laws of the State of Maryland without reference to its conflict of laws provisions; and each Party irrevocably (i) agrees that any action or proceeding arising from or relating to this Agreement may be brought only in the courts of Maryland, (ii) consents, for itself and in respect of its property, to the jurisdiction of such courts in any such action or proceeding, and (iii) waives any objection to proceeding in such venue, including that the forum is inconvenient.

21. **Dispute Resolution**.  Except for any claim for injunctive relief arising out of a breach of section 15 of this Agreement, the Parties agree to confidentially arbitrate in the State of Maryland through JAMS (formerly Judicial Arbitration and Mediation Service), any and all disputes or claims arising out of or related to the validity, enforceability, interpretation, performance or breach of this Agreement, whether sounding in tort, contract, statutory violation or otherwise, or involving the construction or application or any of the terms, provisions, or conditions of this Agreement. Any arbitration may be initiated by a written demand to the other Party. The arbitrator's decision shall be final, binding, and conclusive. The Parties further agree that this Agreement is intended to be strictly construed to provide for arbitration as the sole and exclusive means for resolution of all disputes hereunder to the fullest extent-permitted by law. The Parties expressly waive any entitlement to have such controversies decided by a court or a jury.  The Parties further agree that the arbitrator of any such dispute may, in the arbitrator's discretion, award money damages to the prevailing Party, including the costs of the arbitration, and attorney's fees, as well as permanent injunctive relief.

22. **Severability**.  Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent, but only to the extent, of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Agreement, unless such a construction of such provision would be unreasonable.

23. **Additional Documents**.  Each of the Parties hereto agrees to execute and deliver any and all further agreements, documents, or instruments, and to take any actions reasonably necessary to effectuate this Agreement and the transactions referred to herein or contemplated hereby as reasonably requested by the other Party to perfect or evidence rights hereunder.

24. **Expenses**.  Each Party hereto shall pay its own expenses incident to this Agreement and the transactions contemplated hereby, including all financial advisor, legal, and accounting fees and disbursements.

25. **Headings**.  Titles and headings to Sections in this Agreement and in the Exhibits attached to it are inserted for convenience only and are not intended to be a part of or to affect the meaning or interpretation of the Agreement.

26. **Failure to Enforce**.  The failure of any Party hereto to enforce at any time any provision of this Agreement shall not be construed to be a waiver of such provision, nor in any way to affect the validity of this Agreement or any part hereof, or the right of any Party thereafter to enforce each and every such provision.

27. **Counterparts**.  This Agreement may be executed in any number of counterparts and any Party hereto may execute any such counterpart, each of which when executed and delivered shall be deemed to be an original and all of which counterparts taken together shall constitute but one and the same instrument.  This Agreement shall become binding when one or more counterparts taken together shall have been executed and delivered by the Parties.  It shall not be necessary in making proof of this Agreement or any counterpart hereof to produce or account for any of the other counterparts.

[**SIGNATURE PAGES TO FOLLOW**]

IN WITNESS WHEREOF, the Parties hereto have duly executed this Agreement on the date first written.

WITNESS/ATTEST

By: _Wendy Cleveland_

Name: _Wendy Cleveland_

Date: _10.20.2014_

NOVOFORM TECHNOLOGIES, LLC

By: _Ramez Elgammal_

Name: _Ramez Elgammal_

Date: _10-20-14_

Title: _President, CTO_

WITNESS/ATTEST

By: _Bryan Laird_

Name: _Bryan Laird_

Date: _10/15/2014_

MEMBERS OF NOVOFORM

By: _Armin Azod_

Name: _Armin Azod_

Date: _10/15/2014_

By: _____

Name:_____

Date: _____

By: _____

Name: _____

Date: _____

By: _____

Name:_____

Date: _____

By: _____

Name: _____

Date: _____

By: _____

Name:_____

Date: _____

By: _____

Name: _____

Date: _____

11

IN WITNESS WHEREOF, the Parties hereto have duly executed this Agreement on the date first written.

**WITNESS/ATTEST**                    **NOVOFORM TECHNOLOGIES, LLC**

By: _____          By: _____

Name: _____          Name: _____

Date: _____          Date: _____

                                     Title: _____


**WITNESS/ATTEST**                    **MEMBERS OF NOVOFORM**

By: _Bryan Laird_ (signature)        By: _Armin Azod_ (signature)

Name: _Bryan Laird_                  Name: _Armin Azod_

Date: _10/15/2014_                   Date: _10/15/2014_

By: _(signature)_                    By: _Peter S. Jm_ (signature)

Name: _Mark Martin_                  Name: _PETER JOHN_

Date: _10/16/2014_                   Date: _10/16/2014_

By: _____          By: _____

Name: _____          Name: _____

Date: _____          Date: _____

By: _____          By: _____

Name: _____          Name: _____

Date: _____          Date: _____

IN WITNESS WHEREOF, the Parties hereto have duly executed this Agreement on the date first written.

| WITNESS/ATTEST | NOVOFORM TECHNOLOGIES, LLC |
|---|---|
| By: | By: |
| Name: | Name: |
| Date: | Date: |
|  | Title: |

| WITNESS/ATTEST | MEMBERS OF NOVOFORM |
|---|---|
| By: _Bryan Laird_ | By: _Azi Azod_ |
| Name: Bryan Laird | Name: Armin Azod |
| Date: 10/15/2014 | Date: 10/15/2014 |
| By: | By: _Peter S. John_ |
| Name: Mark Martin | Name: PETER JOHN |
| Date: 10/16/2014 | Date: 10/16/2014 |
| By: | By: |
| Name: Amanda Jasso | Name: Shantanu Sharma |
| Date: 10/16/14 | Date: 10/16/14 |
| By: | By: |
| Name: | Name: |
| Date: | Date: |

11

By: _____

Name: _____

Date: _____

By: ~~signature~~ _____

Name: DIANLU JIANG

Date: 10/16/14

By: _____

Name: _____

Date: _____

By: ~~signature~~ _____

Name: DONG ZHANG

Date: 10-16-2014

WITNESS/ATTEST

By: ~~signature~~ _____

Name: Bayan Laird

Date: 10/15/2014

CECILIA LLC

By: ~~signature~~ _____

Name: James G. Robinson, CEO

Date: 10/15/2014

12

## EXHIBIT A

### Acquired Assets

1. All Membership interests in Novoform Technologies, LLC.

2. All assets owned by or controlled by Novoform Technologies, LLC.

3. Any patent applications and patents with claims issuing in any country claiming priority to PCT Application No. PCT/US2014/056111, filed on September 17, 2014 (the "PCT Application").

## EXHIBIT B

## PAYMENT SCHEDULE

### Expense Reimbursement

| EXPENSE REIMBURSEMENT PAYABLE IN THREE EQUAL PAYMENTS | | | |
|---|---|---|---|
| PAYEE | PAYMENT AMOUNT USD | | |
| | At Closing | September 30, 2015 | December 31, 2015 |
| Peter Dekom | $10,000.00 | $10,000.00 | $10,000.00 |
| Armin Azod | $28,443.00 | $28,443.00 | $28,443.00 |

## EXHIBIT B (cont'd)

### Purchase Price Payment to Members of Novoform

The Purchase Price of $1,000,000 will be paid by Cecilia to the individuals below on the dates and in the amounts set forth in the tables as follows:

| INITIAL PURCHASE PRICE PAYMENT DUE AT CLOSING | |
|---|---|
| PAYEE | PAYMENT AMOUNT USD |
| Ramez Elgammal | $102,000.00 |
| Peter John | $58,000.00 |
| Armin Azod | $18,000.00 |
| Shantanu Sharma | $16,000.00 |
| Dong Zhang | $6,000.00 |

| SECOND PAYMENT DUE ON SEPTEMBER 30, 2015 | |
|---|---|
| PAYEE | PAYMENT AMOUNT USD |
| Ramez Elgammal | $153,000.00 |
| Peter John | $87,000.00 |
| Armin Azod | $27,000.00 |
| Shantanu Sharma | $24,000.00 |
| Dong Zhang | $9,000.00 |

**EXHIBIT B (cont'd)**

| THIRD PAYMENT DUE ON DECEMBER 31, 2015 | |
|---|---|
| PAYEE | PAYMENT AMOUNT USD |
| Ramez Elgammal | $255,000.00 |
| Peter John | $145,000.00 |
| Armin Azod | $45,000.00 |
| Shantanu Sharma | $40,000.00 |
| Dong Zhang | $15,000.00 |

# EXHIBIT C

## ASSIGNMENT FROM NOVOFORM TECHNOLOGIES, LLC TO CECILIA, LLC

WHEREAS, the undersigned, to wit: <u>Novoform Technologies, LLC.</u> (hereinafter "ASSIGNOR"), a corporation duly organized and existing under the laws of California and having its principal office and place of business at 1801 Century Park East, 24th Floor, Los Angeles, CA 90067, is the lawful owner of the following inventions:

1. PCT International Patent Application No. PCT/US2014/056111 entitled "Methods and Catalysts for Converting Methane to Methanol"; ("Invention").

AND WHEREAS, <u>Cecilia, LLC</u> (hereinafter "ASSIGNEE"), having an address of 10 East Lee Street, Suite 2705, Baltimore, MD 21202 desires to acquire the entire right, title, and interest therein;

NOW, THEREFORE, in exchange for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, ASSIGNOR has sold, assigned, transferred and set over, and by these presents does hereby sell, assign, transfer and set over, unto the said ASSIGNEE, its successors, legal representatives and assigns, its entire, worldwide right, title and interest in, to and under the Invention, including any United States provisional or non-provisional application embodying the Invention or any other United States application claiming priority to a provisional application under 35 U.S.C. § 119(e) or converted therefrom, or to any application claiming the benefit of a non-provisional application under 35 U.S.C. § 120, including all divisions, continuations, and continuations-in-part thereof, and all Patents of the United States which may be granted thereon and all reissues and extensions thereof; and, if applicable, all applications for industrial property protection, including, without limitation, all applications for patents, utility models, and designs which may hereafter be filed for said invention in any country or countries other than the United States, together with the right to file such applications and the right to claim for the same the priority rights derived from said United States application under the Patent Laws of the United States, the International Convention for the Protection of Industrial Property, or any other international agreement or the domestic laws of the country in which any such application is filed, as may be applicable; and all forms of industrial property protection, including, without limitation, patents, utility models, inventors' certificates and designs which may be granted for the invention in any country or countries foreign to the United States and all extensions, renewals and reissues thereof, the same to be held and enjoyed by the ASSIGNEE, for its own use and behalf and the use and behalf of its successors, legal representatives, and assigns, to the full end of the term or terms for which Letters Patent or Patents may be granted as fully and entirely as the same would have been held and enjoyed by the ASSIGNOR had this sale and assignment not been made;

And ASSIGNOR hereby authorizes and requests the Commissioner of Patents and Trademarks of the United States, and, if applicable, any Official of any country or countries foreign to the United States, whose duty it is to issue patents or other evidence or forms of industrial property protection on applications as aforesaid, to issue the same to the ASSIGNEE, its successors, legal representatives and assigns, in accordance with the terms of this instrument;

17

And ASSIGNOR hereby covenants and agrees that it has the full right to convey the entire interest previously or herein assigned, and that it has not executed, and will not execute, any agreement in conflict herewith;

And ASSIGNOR hereby further covenants and agrees that it will communicate to the ASSIGNEE, its successors, legal representatives and assigns, any facts known to it respecting said invention, testify in any legal proceeding, sign all lawful papers, execute all divisional, continuing, reissue and foreign applications, make all rightful oaths, and generally do everything possible to aid the ASSIGNEE or its successors, legal representatives and assigns, to obtain and enforce proper protection for said invention in all countries;

And each ASSIGNOR hereby authorizes the ASSIGNEE or its patent attorneys to complete this form by the addition of the application number, application filing date, and attorney docket number, if necessary.

By: <u>Novoform Technologies, LLC</u>                        <u>Date Signed</u>

Name: _Ramez Elgammal_                         _10-20-14_

Title: President, CTO

Address: 2351 East 5th Avenue
Knoxville, TN 37917

Before me personally appeared the person whose name is subscribed to the foregoing instrument, and executed the foregoing instrument in my presence for the purpose contained therein, by signing his/her name hereto.

<u>Signature</u>                                        <u>Date Signed</u>

_Wendy Cleveland_                        _10-20-2014_

WENDY CLEVELAND
STATE
OF
TENNESSEE
NOTARY
PUBLIC
KNOX COUNTY

comm Exp 3-6-2018

**EXHIBIT D**

**ASSIGNMENT FROM INVENTORS TO NOVOFORM TECHNOLOGIES, LLC**

WHEREAS, Ramez ELGAMMAL, ("Assignor") hereby irrevocably sell, transfer, convey, and assign to: Novoform Technologies, LLC with principal offices located 1801 Century Park East, 24th Floor, Los Angeles, CA 90067 ("Assignee") his entire right, title and interest for the United States of America and its territorial possessions and all other countries and patent regions, including all rights of priority and rights to recover for infringement, in the invention(s) disclosed in the patent application entitled:

     1. PCT International Patent Application No. PCT/US2014/056111 entitled "Methods and Catalysts for Converting Methane to Methanol"; ("Invention").

NOW, THEREFORE, in exchange for good and valuable consideration to each inventor, the receipt and sufficiency of which is hereby acknowledged, ASSIGNOR has sold, assigned, transferred and set over, and by these presents does hereby sell, assign, transfer and set over, unto the said ASSIGNEE, its successors, legal representatives and assigns, his or her entire, worldwide right, title and interest in, to and under the Invention, including any United States provisional or non-provisional application embodying the Invention or any other United States application claiming priority to a provisional application under 35 U.S.C. § 119(e) or converted therefrom, or to any application claiming the benefit of a non-provisional application under 35 U.S.C. § 120, including all divisions, continuations, and continuations-in-part thereof, and all Patents of the United States which may be granted thereon and all reissues and extensions thereof; and, if applicable, all applications for industrial property protection, including, without limitation, all applications for patents, utility models, and designs which may hereafter be filed for said Invention in any country or countries other than the United States, together with the right to file such applications and the right to claim for the same the priority rights derived from said United States application under the Patent Laws of the United States, the International Convention for the Protection of Industrial Property, or any other international agreement or the domestic laws of the country in which any such application is filed, as may be applicable; and all forms of industrial property protection, including, without limitation, patents, utility models, inventors' certificates and designs which may be granted for the Invention in any country or countries foreign to the United States and all extensions, renewals and reissues thereof, the same to be held and enjoyed by the ASSIGNEE, for its own use and behalf and the use and behalf of its successors, legal representatives, and assigns, to the full end of the term or terms for which Letters Patent or Patents may be granted as fully and entirely as the same would have been held and enjoyed by the ASSIGNOR had this sale and assignment not been made;

     And ASSIGNOR hereby authorizes and requests the Commissioner of Patents and Trademarks of the United States, and, if applicable, any Official of any country or countries foreign to the United States, whose duty it is to issue patents or other evidence or forms of industrial property protection on applications as aforesaid, to issue the same to the ASSIGNEE, its successors, legal representatives and assigns, in accordance with the terms of this instrument;

And ASSIGNOR hereby covenants and agrees that he or she has the full right to convey the entire interest previously or herein assigned, and that he or she has not executed, and will not execute, any agreement in conflict herewith;

And ASSIGNOR hereby further covenants and agrees that he or she will communicate to the ASSIGNEE, its successors, legal representatives and assigns, any facts known to him or her respecting said Invention, testify in any legal proceeding, sign all lawful papers, execute all divisional, continuing, reissue and foreign applications, make all rightful oaths, and generally do everything possible to aid the ASSIGNEE or its successors, legal representatives and assigns, to obtain and enforce proper protection for said Invention in all countries;

And ASSIGNOR hereby authorizes the ASSIGNEE or its patent attorneys to complete this form by the addition of the application number, application filing date, and attorney docket number, if necessary.

In witness whereof, I, ASSIGNOR, affix my signature.

| 2 0 1 | LEGAL NAME OF JOINT INVENTOR | FAMILY NAME OR SURNAME ELGAMMAL | | GIVEN FIRST NAME Ramez | | GIVEN MIDDLE NAME | |
|---|---|---|---|---|---|---|---|
| | RESIDENCE & CITIZENSHIP OF INVENTOR | CITY ~~Los Angeles~~ Knoxville | | STATE ~~CA~~ TN | COUNTRY USA | COUNTRY OF CITIZENSHIP USA | |
| | MAILING OR EMPLOYMENT ADDRESS OF INVENTOR | STREET 1801 Century Park East, 25th Floor | | | | | |
| | | CITY Los Angeles | | STATE CA | | ZIP CODE 90067 | COUNTRY USA |
| | SIGNATURE OF INVENTOR 2014 *Ramez Elgammal* | | | | DATE 10-20-14 | | |

THE FOREGOING ASSIGNMENT IS AGREED TO AND ACCEPTED BY:

10-20-14
_____

Date

*Ramez Elgammal*
_____

Name: Ramez Elgammal

Position or Title: President, CTO

20

EXHIBIT E "Elgammal"

All Royalty payments to Ramez Elgammal ("Elgammal") and Armin Azod ("Azod") as set forth in Section 4 hereunder shall be made in U.S. dollars by wire transfer to such bank account(s) as Elgammal and Azod may from time to time designate by notice in writing to Cecilia.

Until otherwise designated by notice, any **Royalty** payments due to Elgammal and Azod under this Agreement shall be paid as follows:

Account Holder:

Account Number:

Bank Name & Address:

SWIFT / BIC:

21

EXHIBIT E

All **Royalty** payments to Ramez Elgammal ("Elgamnal") and Armin Azod ("Azod") as set forth in Section 4 hereunder shall be made in U.S. dollars by wire transfer to such bank account(s) as Elgammal and Azod may from time to time designate by notice in writing to Cecilia.

Until otherwise designated by notice, any **Royalty** payments due to ▊▊▊▊ Azod under this Agreement shall be paid as follows:

Account Holder:            [
Account Number:   ℐ𝐵𝐴𝒩   [
Bank Name & Address:       [
SWIFT / BIC:               [