**STEFFIN AZOD LLP**
William C. Steffin
william.steffin@usaiplaw.com
Armin Azod
armin.azod@usaiplaw.com
Amanda Fleming
amanda@usaiplaw.com
Aaron Perez-Daple (*pro hac vice* to be filed)
aaron@usaiplaw.com
Alfredo Perez de Alejo (*pro hac vice* to be filed)
alfredo@usaiplaw.com
1801 Century Park East, Floor 24
Los Angeles, CA 90067
(213) 507-9796

*Attorneys for Respondents Armin Azod, et al.,*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CECILIA, LLC, *et al.*,<br><br>                 Petitioners,<br><br>        v.<br><br>ARMIN AZOD, *et al.*,<br><br>                 Respondents. | CASE NO.: 2:19-cv-9552-ODW (ASx)<br><br>Hon. Otis D. Wright II<br><br>**JOINT STATUS REPORT PURSUANT TO ORDER GRANTING RESPONDENTS' MOTION TO STAY [42]**<br><br>Date:        None Set<br>Time:<br>Judge:       Hon. Otis D. Wright II<br>Courtroom: 5D, 5th Floor |

Pursuant to the Court's Order on May 21, 2020, Granting Respondents' Motion to Stay, (the "Order"), the Respondents Dr. Shantanu Sharma, Dr. Dong Zhang, Peter John, Dr. Ramez Elgammal, and Armin Azod ("Respondents," or "Azod Parties") and Petitioners James G. Robinson, Morgan Creek Productions, Inc., Good Stuff, LLC, and Cecilia, LLC ("Petitioners," or "Robinson Parties," and together with the Respondents, the "Parties") submit the following Joint Status Report.

### **Interim Award of May 15, 2020.**

After extensive briefing and hearings, the Hon. Judge Legg, issued an Interim Award of May 15, 2020 ("Interim Award").  *See* Pet. Ex. 1.  The Interim Award states "… the APA is a valid contract, unbreached by Claimants [Azod Parties], and that … Cecilia breached the APA by failing to pay the amounts due under the contract."  *See* Pet. Ex. 1 at 8.  The Interim Award also states that "Hence, Claimants [Azod Parties] are the prevailing parties under Section 21 of the APA."  *See* Pet. Ex. 1 at 9.

The Interim Award also states that "Under equitable estoppel, I hold Mr. Robinson and Morgan Creek jointly and severally liable for Claimants' [Azod Parties] attorneys' fees and costs, as well as the cost of the arbitration."  *See* Pet. Ex. 1 at 15.  Specifically, the Interim Award states "Mr. Robinson and Morgan Creek claim a benefit under Section 21 while disclaiming any liability under it.  This is inequitable; they cannot use Section 21 as both sword and shield."  *See* Pet. Ex. 1 at 17.

The Hon. Judge Legg did not extend contract liability personally to Mr. Robinson and Morgan Creek, however.  The Interim Award states "To protect himself from personal liability, he [Mr. Robinson] participated in the asset purchase through a thinly-capitalized shell company, Cecilia."  *See* Pet. Ex. 1 at 14.

The Hon. Judge Legg stated in the Interim Award that "This award is an Interim Award and not a Final Award or a Partial Final Award."  *See* Pet. Ex. 1 at 19.

1

**Scheduling Order 35**

On May 21, 2020, the Robinson Parties filed a Request for Correction to Interim Award of May 15, 2020, and a Request for Telephonic Conference to set Briefing and Hearing Schedule.

On June 3, 2020, the Hon. Judge Legg issued Scheduling Order 35. *See* Pet. Ex. 2. Scheduling Order 35 states "After reviewing the factual record and the law of equitable estoppel, I ruled that, 'I have the authority under the doctrine of equitable estoppel to bind James G. Robinson and Morgan Creek to the APA, making them responsible, jointly and severally with Cecilia, for the breach of contract award....'" *See* Pet. Ex. 2 at 1.

Scheduling Order 35 states "The issue of equitable estoppel was briefed by the parties through eleven (11) separate filings. I permitted Respondents [Robinson Parties] to file supplemental briefs of seventeen (17), five (5), and seven (7) pages on the issue of equitable estoppel. Respondents [Robinson Parties] had a full and fair opportunity to brief the issue." *See* Pet. Ex. 2 at 14.

Additionally, "I granted Respondents [Robinson Parties] leave to take discovery on the equitable estoppel issue. Respondents [Robinson Parties] had a full and fair opportunity to take discovery on the issue." *Id.*

Furthermore, "I granted Respondents [Robinson Parties] leave to introduce evidence at the hearing on equitable estoppel. Respondents [Robinson Parties] had a full and fair opportunity to introduce evidence on the issue." *Id.*

Finally, the Hon. Judge Legg concluded, "I will, however, treat Respondents' [Robinson Parties] request for correction as a motion to reconsider. Respondents [Robinson Parties] contend that they failed to make all of their arguments. I will give them an opportunity to make them. If they persuade me to change my mind, I will do so." *Id.*

The Parties submitted their respective Motion for Reconsideration, Opposition and Reply papers per the briefing schedule set by the Hon. Judge Legg and are awaiting his decision.

### Petitioners' Position

On February 7, 2019, following a week-long hearing on the merits, the Hon. Benson Everett Legg III ("the Arbitrator") issued his Partial Final Award in which he held that only Respondent Cecilia, LLC ("Cecilia") was liable for breach of the agreement at issue—the Asset Purchase Agreement ("APA")—which was the only remaining claim against the Robinson Parties in the underlying arbitration.  All of the Azod Parties' other claims against the Robinson Parties had previously been disposed of, either through summary disposition or by the Arbitrator during the merits hearing.

On September 30, 2019, during a status conference, the Arbitrator stated that that issue of an award of attorneys' fees and costs remained, and that he would decide the fees and cost issue using a two-step process: (1) First, the Arbitrator would make a final ruling as to against whom liability would be imposed and, accordingly, against whom judgment would be entered; (2) Second, he would decide against whom attorneys' fees and costs would be awarded, depending on who prevailed and on what claims.

On May 15, 2020, the Arbitrator issued his Interim Award, which (1) reaffirmed his finding of contract liability against Cecilia only, and thus, his intent to enter judgement in favor of the Azod Parties against Cecilia only for breach of the APA, attorneys' fees, costs, and interest, and (2) stated that he would award the Azod Parties their reasonable attorneys' fees, costs, and interest jointly and severally against James G. Robinson ("Robinson") and Morgan Creek Productions, Inc. ("Morgan Creek").

On May 21, 2020, the Robinson Parties submitted a Request for Telephonic Conference, which sought to correct the Arbitrator's Interim Award—specifically, his premature and erroneous award of reasonable attorneys' fees, costs, and interest jointly and severally against Robinson and Morgan Creek.  Among other arguments which disputed the Arbitrator's authority and basis for an award of joint and several liability for fees and costs against Robinson and Morgan Creek, the Robinson Parties argued that the Arbitrator prematurely decided this issue before the parties had been provided the opportunity to fully brief the issue, which was inconsistent with the Arbitrator's prior

3

rulings.

Upon review of the Robinson Parties' Request for Telephonic Conference, the Arbitrator issued Scheduling Order 35, which permitted the Robinson Parties to file a motion for reconsideration of the Interim Award.

The Robinson Parties' Motion for Reconsideration of the May 15, 2020 Interim Award, which also requests oral argument on the issues raised therein, has been fully briefed and is now pending before the Arbitrator.  The Arbitrator has not yet issued his ruling with respect to this Motion, nor has he yet issued an order scheduling oral argument.

Dated: August 19, 2020                   Respectfully Submitted,

*/s/ Armin Azod*

Armin Azod

STEFFIN AZOD LLP
Aaron Perez-Daple (*pro hac vice* to be filed)
Alfredo Perez de Alejo (*pro hac vice* to be filed)
William C. Steffin
Amanda Fleming
Armin Azod

1801 Century Park East, Floor 24
Los Angeles, CA 90067
(213) 507-9796

*Attorneys for Respondents Armin Azod, et al.*

4

Dated: August 19, 2020

/s/ Fred D. Heather
Fred D. Heather
Olivia M. Weiss

GLASER WEIL FINK HOWARD
  AVCHEN & SHAPIRO LLP
10250 Constellation Blvd, 19th Floor
Los Angeles, CA 90067

*Attorneys for Petitioners Cecelia, LLC;
Good Stuff, LLC; James G. Robinson;
and Morgan Creek Productions, Inc.*

## SIGNATURE CERTIFICATION

I hereby certify that the content of this document is acceptable to Fred Heather, counsel for Respondents, and that I have obtained Mr. Heather's authorization to affix his electronic signature to this document.

*/s/ Armin Azod*
Armin Azod

# EXHIBIT
# 1

**JAMS ARBITRATION**
**Benson Everett Legg, JAMS Arbitrator**

AZOD, ARMIN, et al.                          *

          Claimants,                       *

     v.                                      *

ROBINSON, JAMES G., et al.            *        JAMS Reference No.: 1415013632

                                   *

          Respondents.                   *

                                   *

*        *        *        *        *        *        *        *        *        *        *        *        *

**INTERIM AWARD**
**OF**
**MAY 15, 2020**

The original Claimants were Armin Azod ("Azod"), Shantanu Sharma ("Sharma"), Dong Zhang ("Zhang") and Peter John ("John").  They initiated this arbitration by filing a Demand against four Respondents, James G. Robinson ("Robinson") and three corporations owned and controlled by him: Morgan Creek Productions, Inc. ("Morgan Creek"), Cecelia, LLC, ("Cecilia") and Good Stuff, LLC. ("Good Stuff").[1]

Robinson, Cecilia, and Good Stuff filed counterclaims against Azod, Sharma, Zhang, and John.[2]  They added Ramez Elgammal ("Elgammal") as a party by filing a third-party claim against him.  Dr. Elgammal was aligned as a Claimant, Counter-Respondent.[3]

---

[1] Cecilia and Good Stuff are shells.  Morgan Creek is a substantial company.
[2] Response to Demand for Arbitration dated September 19, 2016.
[3] Claimants filed an Amendment to Demand for Arbitration Adding Dr. Ramez Elgammal as a Claimant.

Claimants Azod, Sharma, Zhang, John and Elgammal filed an Amended Demand against all Respondents, who filed an answer that interposed a general denial and affirmative defenses.[4]  In their answer, Robinson, Cecilia, and Good Stuff reasserted their counter-claims against all Claimants.

In this Interim Award, the term, "Claimants" includes Azod, Sharma, Zhang, John, and Elgammal. The term, "Respondents" includes Robinson, Cecilia, Good Stuff, and Morgan Creek. All Claimants are Counter-Respondents.  All Respondents save Morgan Creek are Counter-Claimants.

On February 7, 2019, following a week-long hearing on the merits, I issued a Partial Final Award (Corrected) ("PFA").  Because the PFA did not resolve all claims raised in the arbitration, I set a hearing for March 1, 2019 to discuss with counsel a schedule for resolving the open issues.[5]   At the hearing, the parties disagreed as to the issues the PFA had left open. Principally, they disagreed whether the issue of Respondents' joint and several liability for breach of contract had been left open.  I directed counsel to brief their disagreement. Following briefing and a hearing, I issued Scheduling Order 27 on September 17, 2019.

As Scheduling Order 27 recites, the PFA ruled that the Asset Purchase Agreement ("APA") is a valid contract, unbreached by Claimants.  Based on this finding, I awarded judgment in favor of Claimants against Cecilia, the only Respondent that was a signatory to the APA, in the amount the parties stipulated was unpaid under the contract, $856,886.  I also

---

[4] Second Amended Response and Counter-Claims filed October 6, 2017.
[5] Because I did not close the merits hearing, the taking of additional evidence is permitted.

2

awarded judgment in favor of Claimants against Cecilia for the costs of the arbitration.[6]  The

PFA did not resolve all issues concerning Cecilia, however.  I ruled that Cecilia's liability for pre

and post-judgment interest, attorneys' fees, and other litigation costs would be decided in

further proceedings.

The PFA also intentionally left open whether any Respondent other than Cecilia is jointly

and severally liable to Claimants for breach of contract.  The liability of Respondents James G.

Robinson, Morgan Creek, and Good Stuff for breach of the APA was expressly reserved for

further proceedings.  Their potential liability extended to (i) the amount stipulated by the

parties as unpaid under the APA ($856,886), (ii) the cost of the arbitration, (iii) Claimants'

attorneys' fees and other costs, and (iv) pre and post-judgment interest.

Initially, Claimants sought to hold all Respondents jointly and severally liable for any award

imposed against Cecilia LLC under three theories: (i) equitable estoppel, (ii) paramount equity,

and (iii) piercing the corporate veil of Cecilia.  Eventually, Claimants elected to proceed under

equitable estoppel and drop the other two theories.  This election allowed discovery to be

simplified and enabled the open issues, including equitable estoppel, to be decided based on

the written record, limited briefing, and oral argument.

Oral argument took place on March 26, 2020.[7]  I granted both sides leave to submit short

post-argument briefs.  Respondents filed a Supplemental Brief on Equitable Estoppel on April 6,

2020.  Claimants stood on their previous submissions.

The relevant briefing includes the following:

---

[6] Because the Arbitration is ongoing, the costs have not yet been fixed.  At the time of the PFA, the costs billed by JAMS were $130,802.02.
[7] Neither side offered testimony.  With the agreement of both sides, I received the written affidavit of Respondent, James G. Robinson.

- Claimants' Motion and Memorandum in Support of Motion for Joint and Several Liability, and Allocation of Attorneys' Fees, Costs, and Interest, filed April 15, 2019,

- Motion by Respondents James G. Robinson and Morgan Creek Productions, Inc. for Attorneys' Fees and Costs, filed April 15, 2019,

- Respondents' Opposition to Claimants' Motion for Joint and Several Liability and Allocation of Attorneys' Fees, Costs, and Interest, filed May 20, 2019,

- Claimants' Opposition to Respondents' Motion for Attorneys' Fees and Costs, filed May 20, 2019,

- Reply in Support of Motion by Respondents James G. Robinson and Morgan Creek Productions, Inc. for Attorneys' Fees and Costs, filed June 17, 2019,

- Claimants' Supplemental Brief for Joint and Several Liability, filed February 5, 2020,

- Respondents' Brief on Equitable Estoppel, filed on February 5, 2020,

- Respondents' Reply Brief on Equitable Estoppel, filed March 6, 2020,

- Claimants' Opposition to Respondents' Supplemental Brief, filed March 6, 2020,

- Claimants Presentation (PowerPoint) for March 26, 2020 Hearing,

- Respondents' Supplemental Brief on Equitable Estoppel, filed April 6, 2020.

**FACTS**

I hereby adopt the facts stated in the PFA, in Scheduling Order 27, and in my previous rulings. The governing contract is titled, "Asset Purchase Agreement Dated as of October 15, 2014 by and Between Novoform Technologies, LLC And Cecilia, LLC."[8] The "Seller" is defined as Novoform and certain of its members who signed individually. The sole purchaser is Cecilia,

---

[8] The APA is Exhibit 2 to the Declaration of Amanda Fleming, which was filed together with Claimants' Motion and Memorandum in Support of Motion for Joint and Several Liability, and Allocation of Attorneys' Fees, Costs, and Interest on April 15, 2019.

LLC, referred to as "Cecilia."  James G. Robinson signed the APA, but he did so in his representative capacity as CEO of Cecilia.[9]  None of Mr. Robinson's other companies signed, including Morgan Creek and Good Stuff.

Section 21 of the APA (Dispute Resolution) provides for arbitration through JAMS.  The section authorizes the arbitrator, in his discretion, to "award money damages to the prevailing Party, including the cost of the arbitration, and attorney's fees, as well as permanent injunctive relief."[10]

**IDENTIFYING THE PREVAILING PARTY UNDER SECTION 21 OF THE APA**

The first task it to identify the "prevailing party."  Claimants and Respondents both contend that they prevailed in the arbitration.  Resolution of this dispute requires an analysis of the claims made by the parties and the resolution of those claims.

**Arbitration Claims**

Claimants initiated this arbitration by filing a Demand for Arbitration supported by a Statement Supporting Claims.  Claimants asked for judgment against all Respondents (including Morgan Creek) on the following claims:

(i)      Breach of contract.

(ii)     Fraud,

(iii)    Declaratory judgment that Respondents committed fraud/inequitable conduct against the USPTO

(iv)    An award of compensatory damages, and

---

[9] Cecilia LLC's signature was affixed "By James G Robinson, CEO"
[10] Section 21 also provides: "Any arbitration may be initiated by a written demand to the other Party.  The arbitrator's decision shall be final, binding, and conclusive."

(v)      An award of punitive damages, attorneys' fees and costs.

In their Response to Demand for Arbitration, all Respondents (including Morgan Creek and Good Stuff) denied the allegations of the Demand and asserted Affirmative Defenses.  Mr. Robinson, Cecilia, and Good Stuff advanced the following Counter-Claims.

1.  Rescission based on fraud

2.   Rescission based on breach of contract

3.  Breach of contract

4.  Breach of implied covenant of good faith and fair dealing

5.  Fraud: intentional misrepresentation, negligent misrepresentation, promissory fraud and concealment

6.  Breach of fiduciary duty

**The Arbitrator's Rule 18 decision**

Following discovery, the parties filed motions for summary disposition under Rule 18 of the JAMS Comprehensive Arbitration Rules and Procedures.  I heard the motions during a day-long hearing on July 27, 2018.  I decided the motions in an order dated September 24, 2018. The order disposed of some claims and allowed others to proceed.

**Respondents' fraud counter-claim**

Recognizing that material facts were in dispute, Respondents did not move for summary disposition on their fraud counter-claim alleging that Mr. Robinson was the target of a scam. They summarized their fraud claim as follows:

Unbeknownst to Mr. Robinson, he had been the target of a fairly sophisticated scam. Claimants led Mr. Robinson to believe that Novoform had developed the "ground-

6

breaking" technology of a single-step methane to methanol conversion.  Claimants represented to Mr. Robinson that this "technology" was worth billions.  But, this was deception on a grand scale[11]

The fraud counter-claim proceeded to the merits hearing.

**Respondents' breach of contract counter-claim.**

Mr. Robinson, Cecilia, Good Stuff, and Morgan Creek moved for summary disposition on "Respondents' counterclaim that claimants breached the APA." [12] They alleged that Claimants breached the APA by failing to disclose negative test data and results and the existence of a prior art patent, PCT'178.  They also alleged that Claimants breached the APA by failing to transfer to Respondents all of Novoform's assets.  I denied Respondents' motion, ruling that material facts were in dispute.  Hence, these alleged breaches of contract proceeded to the merits hearing.

**Claimants' "offensive" Rule 18 motion.**

Claimants filed an "offensive" Rule 18 motion asserting that Respondents breached the APA by failing to pay sums owed under the contract.[13]  I denied the motion.  It was undisputed that Respondents refused to pay amounts due.  It remained to be determined, however, whether Claimants' alleged misconduct excused the payments.  Hence, the Azod Parties' breach of contract claim proceeded to the hearing.

**Claimants' fraud claim against James G. Robinson**

The Azod Parties contended that Mr. Robinson defrauded them by entering into the

---

[11] Respondents' Motion for Summary Disposition, p. 2 (internal citations omitted)
[12] Although Morgan Creek did not assert a breach of contract counterclaim, it is named among the parties moving for summary disposition.  *See,* Motion for Summary Disposition by Respondents and Counter-Claimants, p. 6.
[13] Rule 18 Motion for Breach of Contract by Failure to Pay Sums Due Under the APA

APA with a specific, premeditated plan to steal their technology without paying for it.  I granted summary disposition in favor of the Robinson Parties on this claim.  I found there was insufficient evidence upon which a reasonable fact-finder could conclude that Mr. Robinson intended, as of October 15, 2014, to steal Novoform's technology by entering into a contract he never intended to honor.

**The Merits Hearing and the PFA**

The PFA listed the questions to be decided at the hearing.

1.  Did Claimants fraudulently induce James G. Robinson to enter into the APA?

2.  Did Claimants fraudulently conceal a material fact or facts from James G. Robinson, who, in justifiable reliance on the concealment, entered into the APA?

3.  Did Claimants materially breach Section 9(f) of the APA by failing to disclose negative testing results of which they were aware prior to the signing of the contract?

4.  Did Claimants materially breach Section 9(f) of the APA by failing to disclose the existence of PCT'178 prior to the signing of the contract?

5.  Did Claimants materially breach Section 9(f) of the APA by failing to disclose or misrepresenting the anticipate cost of developing the Novoform catalyst?

6.  Did Claimants materially breach Section 7 (Seller Deliveries at Closing) of the APA by failing to deliver at closing "all assets owned by or controlled by Novoform Technologies, LLC," including protocols, testing results, and other trade secrets?

7.  Is the APA a valid contract binding on Respondents?

The PFA resolved each of these seven questions in favor of Claimants.  *Inter alia.,* I found that Claimants did not defraud Mr. Robinson, that the APA is a valid contract, unbreached by Claimants, and that Respondent Cecilia breached the APA by failing to pay the amounts due

under the contract.[14]

**Claimants are the Prevailing Parties in this Arbitration**

Under Maryland law, the prevailing party is the one that succeeds "on the core claims that formed the basis of the dispute between the parties." *See Royal Inv. Grp., LLC v. Wang,* 183 Md. App. 406, 457-8 (2008) The prevailing party need not succeed on all claims asserted by it or against it. *Imgarten v. Bellboy Corp.,* 383 F. Supp. 2d 825, 842 (D. Md. 2005) ("Although the jury returned a verdict in Bellboy's favor on the Fuddruckers Claim, it is not entitled to costs; under no definition could it be viewed as the prevailing party.")

Claimants are the prevailing parties.  Except for their fraud claim, Claimants prevailed on their claims and counter-claims.  They established Cecilia's breach of the APA. They successfully defended against the counter-claims.[15]  The counter-claims, especially the fraud count, dominated the arbitration, accounting for the bulk of the discovery, motions practice, exhibits, and hearing testimony.  The seven questions decided at the merits hearing related to the counter-claims.  Hence, Claimants are the prevailing parties under Section 21 of the APA.

In the PFA, I ruled that Cecilia was liable under Section 21 for the cost of the arbitration. I now rule that Cecilia is liable for Claimants' reasonable attorneys' fees and other litigation costs.

**Equitable Estoppel Entitles Claimants to an Award of Reasonable Attorneys' Fees, Litigation Expenses, and the Cost of the Arbitration Against James G. Robinson and Morgan Creek.  The Doctrine Does Not Entitle Claimants to an Award for Breach of Contract Against Any Respondent Other than Cecilia.**

---

[14] Prior to the hearing, the parties stipulated to certain payments due under the APA if I ruled that the contract was valid and had not been materially breached by Claimants.

[15] In this Interim Award, I rule that Claimants did not prevail on their breach of contract claim against Robinson, Morgan Creek, and Good Stuff.  I will take this failure into consideration in my award of attorneys' fees, litigation costs, and the cost of the arbitration.

**Equitable Estoppel - The Law**

In the arbitration context, there are a number of cases in which courts have used equitable estoppel to bind nonsignatories to a contract containing an arbitration agreement.  A leading case from the Fourth Circuit explained:

> [T]he Second Circuit recently noted that it had recognized that five theories "aris[ing] out of common law principles of contract and agency law" could provide a basis for "binding nonsignatories to arbitration agreements: 1) incorporation by references; 2) assumption; 3) agency; 4) veil piercing/alter ego; and 5) estoppel."

*Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GBMH,* 206 F.3d 411, 417 (4th Cir. 2000) (internal citation omitted)

The *International Paper* court explained the doctrine as follows: "Equitable estoppel precludes a party from asserting rights 'he otherwise would have had against another' when his own conduct renders assertion of those rights contrary to equity." (206 F.3d at 417-418) (internal citations omitted) The court observed: "In the arbitration context, the doctrine recognizes that a party may be estopped from asserting the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him. 'To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act.'" (*Id.*, internal citation omitted)

Equitable estoppel has been recognized and applied in cases in Maryland and the Fourth Circuit.  These include:

*United States v. Bankers Ins. Co.*, 245 F3d 315, 322 (4th Cir. 2001) ("For example, no

10

party suing on a contract should be able to enforce certain contract provisions while

simultaneously attempting to avoid the terms of an arbitration provision contained therein.")

    *Seney v. Rent-A-Ctr., Inc.,* 909 F. Supp. 2d 444, 453-454 (D. Md. 2012), *aff'd* 738 F.3d 631

(4th Cir. 2013) ("That is, one cannot claim a benefit of a contract and simultaneously avoid its

burdens; to do so would be inequitable and would contravene the FAA's underlying purposes.")

    *Thomas v. Progressive Leasing,* No. CV RDB-17-1249, 2017 WL 4805235, at *3 (D. Md.

Oct. 25, 2017) (Citing with approval the proposition that, "'[C]ourts in the Fourth Circuit apply

equitable estoppel against a nonsignatory when the nonsignatory's claims seek to enforce

rights contained in the contract with the arbitration provision.'" (internal citation omitted)

    *Case Handyman & Remodeling Servs., v. Schuele,* 183 Md. App. 44, 57-8 (Ct. Spec. App.

2008), *judgment vacated on other grounds,* 414 Md. 555 (2010) ("The principle underlying the

theory of equitable estoppel 'rests on a simple proposition: it is unfair for a party to rely on a

contract when it works to its advantage, and repudiate it when it works to its disadvantage.'")

(internal citation omitted) ("Its claims rest on the subcontract and therefore it is bound by all

the terms of that subcontract, not just those that it likes.")

    When deciding whether to apply equitable estoppel to this arbitration, two threshold

questions arise.  First, whether the doctrine applies beyond arbitration cases.  Second, whether

application of the doctrine requires detrimental reliance.

    I turn to the first question.  Equitable estoppel is a traditional, equitable doctrine of

general applicability recognized by state and federal courts.[16]  Courts have applied equitable

---

[16] *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 631 (2009) ("Because 'traditional principles' of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel,' 21 R. Lord, Williston

estoppel outside the confines of arbitration cases.  *See e.g., American S.S. Owners Mut.*

*Protection and Indem. Ass'n v. American Boat Co.,* 2012 WL 527209 (S.D.N.Y. 2012) (applying

the doctrine to a forum selection clause); *Marano Enterprises of Kansas v. Z-Teca Restaurants,*

*L.P.,* 254 F.3d 753-758 (8th Cir. 2001) (applying the doctrine to a forum selection clause); *(Kelly*

*Aerospace Thermal Sys., v. ABF Freight Sys., Inc.,* No. 15-12227, 2016 WL 3197561, at Fn. 6 (E.D.

Mich., June 9, 2016) ("Even if the Court agreed that the 2013 pricing agreements were between

Defendant and KAPS only, there are many exceptions to the rule that contracts are not

enforceable against non-parties that could be applicable here.") (citation omitted)[17]

In conformity with these and other cases, I rule that nonsignatory estoppel extends

beyond arbitration cases.

Turning to detrimental reliance, the Court of Special Appeals of Maryland has written

that the elements of estoppel are usually described as including reliance by the estopping party.

Reliance is not required, however, wrote the Court in *Bessette v. Weitz,* 148 Md. App. 215, 241-

2 (2002).  "There may be instances, however, of equitable estoppel based solely on conduct by

one party that makes it inequitable and unconscionable to allow him to assert rights and claims

against another party, without the necessity of reliance by the second party."

The *Bessette* court quoted with approval Judge Prescott's description of the doctrine in

*The J.F. Johnson Lumber Co. v. Magruder,* 218 Md. 440, 447-8 (1958).  This description does not

mention reliance as a necessary element.

The whole doctrine of equitable estoppel is a creature of equity and governed by

---

on Contracts Section 57.19, p. 183 (4th ed. 2001), the Sixth Circuit's holding that nonparties to a contact are categorically barred from Section 3 relief was error."

[17] The *Kelly Aerospace* court quoted with approval from *Arthur Anderson LLP v. Carlisle,* 556 U.S. 624, 631 (2009)

equitable principles.  It was educed to prevent the unconscientious and inequitable assertion of rights or enforcement of claims which might have existed or been enforceable, had not the conduct of a party, including his spoken and written words, his positive acts and his silence of negative omission to do anything, rendered it inequitable and unconscionable to allow the rights or claims to be asserted or enforced.

It is undisputed that the *International Paper* line of cases does not require detrimental reliance. For these reasons, I rule the doctrine of equitable estoppel does not require detrimental reliance as a necessary element.

**Does Equitable Estoppel Bind James G. Robinson and Morgan Creek to the APA as if They Were Signatories**

During the course of the arbitration, both Mr. Robinson and Morgan Creek asserted claims under the APA.  For example,

--In their Second Amended Response and Counterclaims, Mr. Robinson and Good Stuff, although not signatories to the APA, counterclaimed for breach of contract, rescission based on breach of contract, and breach of the implied covenant of good faith and fair dealing.[18] Invoking the Dispute Resolution Section of the APA, their counterclaim sought an award of attorneys' fees and the costs of the arbitration.

--During the merits hearing, Respondents' counsel stated that Mr. Robinson was seeking his attorneys' fees.[19]

--During the merits hearing, Respondents introduced into evidence the expert report of Sidney Blum, CPA.  Mr. Blum opined that, "[u]nder the APA, Mr. Robinson out-right acquired Novoform Technologies, LLC...and all of the assets owned or controlled by Novoform and

---

[18] These Respondents' also counter-claimed for fraud, rescission, breach of fiduciary duty, and other theories of recovery.
[19] Transcript, Day 1, Rough at pp. 16-17.

13

Claimants." [20] Mr. Blum's report asserted that breach of contract damages, in the amount he calculated, were due to Respondents collectively.

--Mr. Blum's report observes that paragraph 21 of the APA permits the Arbitrator to award the costs of the arbitration and attorneys' fees to the prevailing party. He opined that "Respondents [not just Cecilia] should obtain a monetary award" on their breach of contract claim that includes "[a]n amount to be calculated in attorney's fees and arbitration cost recovery."[21]

--After the hearing, Respondents James G. Robinson and Morgan Creek filed a motion seeking an award of attorneys' fees and costs. They did so under Section 21 of the APA.

Based on this record, I have the authority under the doctrine of equitable estoppel to bind James G. Robinson and Morgan Creek to the APA, making them responsible, jointly and severally with Cecilia, for the breach of contract damage award, $856,886. I decline to do so, however. In order for a court of equity to render Mr. Robinson and Morgan Creek liable for breach of contract, a high degree of intentionality on their part is required. That degree of intentionality is not met with respect to general contract liability.

Following his past business practice, Mr. Robinson specifically declined to sign the APA personally. To protect himself from personal liability, he participated in the asset purchase through a thinly-capitalized shell company, Cecilia. Mr. Azod, an attorney, knew that Mr. Robinson was signing the contract in a representative capacity only. He knew that he and his

---

[20] Expert Report of Sidney Blum, paragraph 28.
[21] Expert Report of Sidney Blum, paragraph 74-75.

partners were subjecting themselves to the risk that Cecilia might default, leaving them with an uncollectable judgment.

The assertion of breach of contract claims by Mr. Robinson may have been a drafting error.  The same can be said of the language of the Blum Report, which lumps the Respondents together.

In the promissory estoppel cases, there is no risk of inadvertence.  The estopped parties purposefully maintained their inequitable positions at trial and even through an appeal. Exercising the latitude granted to me under principles of equity, I hold that Cecilia, and only Cecilia, is liable for the amount the parties stipulated was unpaid under the contract, $856,886.

**Does Equitable Estoppel Render James G. Robinson and Morgan Creek Liable, Jointly and Severally with Cecilia, for the Cost of the Arbitration and Claimants' Attorneys' Fees and Other Costs Under Section 21 of the APA?**

Under equitable estoppel, I hold Mr. Robinson and Morgan Creek jointly and severally liable for Claimants' attorneys' fees and costs, as well as the cost of the arbitration. On April 15, 2019, after the PFA had been issued, and after the dispute over their liability for contract damages had been squarely raised, Mr. Robinson and Morgan Creek filed a motion titled: Motion by Respondents James G. Robinson and Morgan Creek Productions, Inc. for Attorneys' Fees and Costs.  In it, they argued that the APA authorizes the Arbitrator to award attorneys' fees, costs, and the cost of the arbitration to them even though they were never "proper parties to this action."[22]  They sought an award of $631,160.50 in attorneys' fees and $32,700.50 in JAMS costs.[23]

---

[22] Motion, p. 1.
[23] Motion, p. 5.

In support of their motion, Robinson and Morgan Creek invoked Section 21 of the APA. They wrote: "The APA explicitly authorizes the Arbitrator to award attorneys' fees and costs under Section 21, the provision mandating arbitration: 'The Parties further agree that the arbitrator of any such dispute may, in the arbitrator's discretion, award money damages to the prevailing Party **including the costs of the arbitration, and attorneys' fees,** as well as permanent injunctive relief.'"[24] (emphasis added in the motion)

The APA, Mr. Robinson and Morgan Creek contended, authorizes the Arbitrator to make the award even though they are not parties to the contract.

> Although Mr. Robinson and Morgan Creek are not parties to the APA, the Arbitrator's authority within this arbitration is circumscribed by the terms of the APA. *United Steelworkers of Am. V. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582 (1960). Attorneys' fees provisions "generally are valid and enforceable" under Maryland law. *Stratakos v. Parcells,* 915 A.2d 1022, 1026 (Ct. Spec. App. Md. 2007). A claim for attorneys' fees as relates to a cause of action for fraudulent inducement "arises out of" the underlying contract and is therefore governed by the attendant arbitration clause. *Id.,* at 1030.

Mr. Robinson and Morgan Creek characterized themselves as the prevailing parties because they defeated certain claims made against them. They wrote that they would be justified in seeking a recovery of all attorneys' fees expended by Respondents generally because the work done by Respondents' counsel is indivisible and cannot be ascribed to any individual Respondent. They claimed moderation in seeking less than the total. [25]

In their reply brief, Mr. Robinson and Morgan Creek again argued that they "need not be parties to the APA to recover attorneys' fees and costs."[26] In support of this proposition,

---

[24] Motion, p. 2
[25] Motion, p. 4
[26] Reply in Support of Motion by Respondents James G. Robinson and Morgan Creek Productions, Inc. for Attorneys' Fees and Costs, p. 2.

they wrote: "Accordingly, even though Mr. Robinson and Morgan Creek are not parties to the APA, Claimants' causes of action arose out of the APA, and were therefore disputes governed by the APA's arbitration clause." [27]

Mr. Robinson and Morgan Creek claim a benefit under Section 21 while disclaiming any liability under it.  This is inequitable; they cannot use Section 21 as both sword and shield.[28]  I find that Mr. Robinson and Morgan Creek are bound by Section 21 as if they were signatories. Hence, Mr. Robinson, Morgan Creek, and Cecilia are jointly and severally for Claimants' reasonable attorneys' fees and other litigation expenses, and the cost of the arbitration.

**Claimants Are Entitled to Prejudgment interest on the Amount Awarded against Cecilia.**

Prejudgment interest is recoverable as a matter of right under contracts in writing to pay a specific sum on a day certain.  The purpose of prejudgment interest is to compensate the aggrieved party for the loss of use of the principal and the loss of income from the funds.[29]  In Maryland, the legal rate of interest is six (6) percent per annum.[30]

Cecilia failed to pay Claimants three liquidated sums by a date certain.

- By September 30, 2015, to pay Claimants the Second Purchase Price in the aggregate amount of $300,000 and to pay Mr. Azod a second Expense Reimbursement payment of $28,443.

---

[27] Reply memo, pp. 2-3.
[28] Cecilia is judgment proof.
[29] *See Maryland State Highway Admin. v. Kim, 353 Md. 313, 326* (1999); JW. Berman Props. v. Porter Bros., Inc., 276 Md. 1 (1975).
[30] Mezu v. Progress Bank of Nigeria, PLC, 2013 WL 6531626, Civ. No. JKB-12-2865 (D. Md. Dec. 11, 2013).

- By December 31, 2015, to pay Claimants a Third Purchase Price Payment in the aggregate amount of $500,000, and to pay Mr. Azod a third Expense Reimbursement payment of $28,443, and

- For a one-year period (between November 2014 and October 2015) to pay Dr. Dong Zhang an aggregate of $65,000 in Sponsored Research payments, in equal monthly installments.

Claimants shall submit a proposed form of order calculating the amounts to the date of the PFA.[31]

**Claimants are entitled to Post-Judgment Interest as a Matter of Right**

Maryland Rule 2-604 states: "A money judgment shall bear interest at the rate prescribed by the law from the date of entry."  The post-judgment interest rate in Maryland is Ten (10) percent per annum, the rate prescribed by Section 11-107 of the Courts and Judicial Proceedings Article, Maryland Code Annotated.  *Medical Mut. Liability Ins. Soc. Of Maryland v. Davis,* 389 Md. 95, 109 (2005)

**CONCLUSION**

(1) Claimants' Motion and Memorandum in Support of Motion for Joint and Several Liability, and Allocation of Attorneys' Fees, Costs, and Interest, filed April 15, 2019 is Granted in Part and Denied in Part.

(2) Motion by Respondents James G. Robinson and Morgan Creek Productions, Inc. for Attorneys' Fees and Costs, filed April 15, 2019 is Denied.

---

[31] The PFA is a final award with respect to Cecilia's liability for breach of contract.

18

(3) In the Final Award, judgment will be entered in favor of Claimants against Cecilia for

(i) $856,886 plus pre-judgment interest at the rate of six (6) percent per annum, (ii)

the cost of the arbitration in an amount to be determined, and (iii) Claimants'

reasonable attorneys' fees and litigation costs in an amount to be determined.

Claimants are entitled to post-judgment interest at the rate of ten (10) percent per

annum.

(4) In the Final Award, judgment will be entered in favor of Claimants against James G.

Robinson and Morgan Creek, jointly and severally with Cecilia, for (i) the cost of the

arbitration in an amount to be determined, and (ii) Claimants' reasonable attorneys'

fees and litigation costs in an amount to be determined.  Claimants are entitled to

post-judgment interest at the rate of ten (10) percent per annum.

(5) By **May 20, 2020**, Claimants shall suggest a date by which their fee petition can be

conveniently filed.

(6) After the fee petition has been filed, Cecilia, Morgan Creek, and James G. Robinson

shall suggest a date by which their response can be conveniently filed.  Once the

response has been filed, Claimants will have ten days in which to file a reply

memorandum.

(7)  This award is an Interim Award and not a Final Award or a Partial Final Award.


The above is hereby so **Ordered this 15th day of May 2020**.


Judge Benson Everett Legg (ret.)

19

## **PROOF OF SERVICE BY E-Mail**

Re: Azod, Armin, et al. vs. Robinson, James G., et al.
Reference No. 1415013632

I, Teresa Menendez, not a party to the within action, hereby declare that on  May 17, 2020, I served the

attached INTERIM OF ORDER of MAY 15, 2020 (SIGNED BY JUDGE LEGG) on the parties in the within

action by electronic mail at Washington, DISTRICT OF COLUMBIA, addressed as follows:

Alan S. Gutman Esq.
John F. Juenger Esq.
Gutman Law
433 N. Camden Dr.
Suite 960
Beverly Hills, CA   90210
Phone: 310-385-0700
alangutman@gutmanlaw.com
jjuenger@gutmanlaw.com
    Parties Represented:
    Cecelia, LLC
    Good Stuff, LLC
    James G. Robinson
    Morgan Creek Productions, Inc

Alfredo P. Perez de Alejo Esq.
Steffin, Azod LLP
1801 Century Park East
24th Floor
Los Angeles, CA   90067
Phone: 310-980-5781
alfredo@steffinazod.com
    Parties Represented:
    Armin Azod
    Dr. Dong Zhang
    Dr. Ramez Elgammal
    Dr. Shantanu Sharma
    Peter John

Armin Azod Esq.
David M. Arbogast Esq.
Amanda Fleming Esq.
Steffin, Azod LLP
1801 Century Park East
24th Floor
Los Angeles, CA   90067
Phone: 310-737-8529
armin.azod@usaiplaw.com
david@usaiplaw.com
amanda@usaiplaw.com
    Parties Represented:
    Armin Azod
    Dr. Dong Zhang
    Dr. Ramez Elgammal
    Dr. Shantanu Sharma
    Peter John

Mr. Aaron Perez-Daple
Justin Heather Esq.
Steffin, Azod LLP
1801 Century Park East
24th Floor
Los Angeles, CA   90067
Phone: 312-675-6150
aaron@steffinazod.com
justin@usaiplaw.com
    Parties Represented:
    Armin Azod
    Dr. Dong Zhang
    Dr. Ramez Elgammal
    Dr. Shantanu Sharma
    Peter John

Patricia L. Glaser Esq.
Steven P. Basileo Esq.

Ms. Amber Hannah
Glaser Weil Fink, et al.

Fred D. Heather Esq.
Glaser Weil Fink, et al.
10250 Constellation Blvd.
19th Floor
Los Angeles, CA   90067
Phone: 310-553-3000
pglaser@glaserweil.com
sbasileo@glaserweil.com
fheather@glaserweil.com
    Parties Represented:
    Cecelia, LLC
    Good Stuff, LLC
    James G. Robinson
    Morgan Creek Productions, Inc

10250 Constellation Blvd.
19th Floor
Los Angeles, CA   90067
Phone: 310-553-3000
ahannah@glaserweil.com
    Parties Represented:
    Cecelia, LLC
    Good Stuff, LLC
    James G. Robinson
    Morgan Creek Productions, Inc

I declare under penalty of perjury the foregoing to be true and correct. Executed at Washington,

DISTRICT OF COLUMBIA on May 17, 2020.


 /s/  Teresa Menendez
Teresa Menendez
JAMS
tmenendez@jamsadr.com

# EXHIBIT

# 2

**JAMS ARBITRATION**
**Benson Everett Legg, JAMS Arbitrator**

AZOD, ARMIN, et al.                              *

        Claimants,                      *

     v.                                          *

ROBINSON, JAMES G., et al.             *         JAMS Reference No.: 1415013632

                            *

        Respondents.                    *

*     *     *     *     *     *     *     *     *     *     *     *     *

**SCHEDULING ORDER 35**
**June 3, 2020**

On May 15, 2020, following briefing and a hearing, I issued an Interim Award.[1] In it, I decided that Claimants are the prevailing parties because they succeeded on the core claims in dispute in this arbitration. (p. 9) After reviewing the factual record and the law of equitable estoppel, I ruled that, "I have the authority under the doctrine of equitable estoppel to bind James G. Robinson and Morgan Creek[2] to the APA, making them responsible, jointly and severally with Cecilia,[3] for the breach of contract award, $856,886."  Nevertheless, despite having the authority to do so, I declined on equitable grounds to hold Mr. Robinson and Morgan Creek liable for breach of contract damages ($856,886).  (p. 15)

---

[1] The Interim Award of May 15, 2020 is the second award that I entered in this arbitration.  It must be read in the context of the Partial Final Award (Corrected) of February 7, 2019.
[2] Morgan Creek Productions, Inc.
[3] Cecilia, LLC.

In the Interim Award, applying equitable estoppel to my factual findings, I decided to hold Mr. Robinson and Morgan Creek jointly and severally liable with Cecilia for Claimants' reasonable attorneys' fees, other litigation expenses, and the cost of the arbitration. The Interim Award also declared that Claimants are entitled to (i) prejudgment interest on the amount awarded against Cecilia, and (ii) post-judgment interest as a matter of right under Maryland law.  I directed Claimants to suggest a date for filing their fee petition. I directed Respondents to suggest a date for their response.

On May 21, 2020, Respondents filed a Request for Correction to Interim Award of May 15, 2020 and Request for Telephonic Conference to set Briefing and Hearing Schedule. Respondents contend that, "[i]n the Interim Award of May 15, 2020, the Arbitrator prematurely and inconsistently with his prior rulings , ruled on issues regarding (1) whether to hold Respondents *other than Cecilia* jointly and severally liable for an award of attorneys' fees and costs, and (2) whether an award of prejudgment interest and/or post judgment interest is warranted in this matter—despite the fact that the parties did not have an opportunity to submit briefs regarding these issues,  or be heard on these issues…."  (emphasis in original)

In support of their position, Respondents rely on a snippet, taken out of context, from the transcript of a September 30, 2019 status conference.  The transcript does not support their position, however.  I held the status conference to nail down the issues that remained to be decided in the wake of the Partial Final Award (Corrected)[4]  At that time, Claimants were seeking an award of attorneys' fees, the cost of the arbitration, and other litigation costs as the

---

[4] The transcript is somewhat hard to follow because Respondents' counsel felt constrained to assert repeatedly that the Partial Final Award (Corrected) had finally resolved an issue (Respondents' joint and several liability for the breach of contract award) that I ruled had been left open. This led to the semantic awkwardness of "assuming arguendo" that the issue remained unresolved.

2

prevailing parties.  Contradictorily, Respondents Robinson and Morgan Creek, contending that they were the prevailing parties, were also seeking an award against Claimants.

As the transcript reflects, I a stated I would decide the fee and cost issue using a two-step process.  First, I would decide the parties against whom liability would be imposed.  Second, I would decide the amount of fees and costs to be awarded.

> Arbitrator Legg: **So that in terms of deciding – at least the amount of the attorneys' fees to be awarded and against whom, I have to know against whom liability will be imposed.**  So let me ask claimant's counsel: Does that sound right to you? (p. 17) (emphasis added)

> Mr. Perez De Alejo:  So – your Honor, again, this is Alfredo Perez de Alejo for the claimants.  Your Honor, we do not object to that approach with the caveat that these issues have already been briefed, at least the issues of equitable estoppel…**We are fine with proceeding with – first dealing with the issue of joint and several liability and then, subsequent to that, dealing with the amount of damages [including fees and costs] to the claimants.**  (p. 18) (emphasis added)

> Mr. Heather:  Your Honor, I'll just object to what – his characterization of what our position is and leave it at that.  And we can deal with that later.  (p. 18)

> Arbitrator Legg:  Yes, I think that's appropriate.  **And I believe both sides have agreed that the issue of entitlement to attorneys' fees has been briefed and what's still up in the air is the amount, depending on who won and on what issues.**  Mr. Heather, does that sound correct. (p. 19) (emphasis added)

> Mr. Heather:  I agree with that. (p. 19)

> Arbitrator Legg:  Mr. Perez de Alejo, do we have anything – is there anything more with respect to the cost of the arbitration, or attorneys' fees, or the award, or whether the final award would be imposed only on Cecilia LLC or on respondents jointly and severally, anything else that needs to be discussed at this time to identify the issues…. (p. 21)

> Mr. Perez de Alejo:  None that I can think of at this moment, your Honor. (p. 21)

> Arbitrator Legg:  Good. Mr. Heather, from your standpoint?  (p. 21)

> Mr. Heather: Nothing further, your Honor.  (p. 21)

The process I outlined in the status conference was only logical. I had to decide which side was the prevailing party.  If the award went to Claimants, I had to decide whether to impose joint and several liability against Respondents.  Hence, as a first step, "I have to know against whom liability will be imposed." (p. 17) Once that first step was completed, I could address the amount of the award.

The second step in making a fee and cost award is fact intensive and involves the filing of a fee petition, the application of the lodestar method, and consideration of the "Johnson" factors.  *See Manor Country Club v. Flaa,* 387 Md. 297, 312 (2005); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-9 (5th Cir. 1974) (subsequent history omitted).[5]  In other words, "what's still up in the air is the amount, depending on who won and on what issues."  (p. 19)

The September 30, 2019 status conference transcript must also be read in the context of what came before and what came after. What came after was a series of orders that, with the input of counsel, carefully identified the issues to be decided at the hearing held on March 26, 2020. These orders include:

 On February 7, 2019, I issued the Partial Final Award (Corrected) ("PFA").  I found that the APA is a "valid contract unbreached by Claimants." I awarded judgment in favor of Claimants against Cecilia in the amount stipulated by the parties for breach of contract, $856,886.  I awarded the costs of the arbitration to Claimants against Cecilia.  I expressly left open a number of issues for future resolution.  These included,

> (1) Whether pre and post-judgment interest should be imposed on the award of $856,886.

---

[5] Although this arbitration does not involve a fee-shifting statute, the *Johnson* factors bear on the issue of the reasonableness of the award.

4

(2) Whether the breach of contract award ($856,886) should be imposed on Cecilia, LLC only or on Respondents jointly and severally.

(3) Whether the cost of the arbitration should be imposed on Cecilia, LLC only or on Respondents jointly and severally.

(4) The appropriateness under Maryland law of awarding post-judgment interest on the award of costs.

(5)  The appropriateness of awarding attorneys' fees to Claimants.

(6)  Whether to award to Claimants litigation costs apart from payments to JAMS, and

(7) Whether any award of attorneys' fees and litigation costs should be imposed on Cecilia, LLC only or on Respondents jointly and severally.

On March 1, 2019, I held a hearing by teleconference with counsel to identify the issues remaining to be decided.[6]  Claimants stated their contention that Respondents are jointly and severally liable for breach of contract and other damages, including attorneys' fees and costs. They recognized that only Cecilia is a party to the APA.  They asserted that Mr. Robinson and other Respondents should also be held responsible under several theories, including equitable estoppel, piercing the corporate veil, and paramount equity.

On March 19, 2019, I issued Scheduling Order 25.  It set a schedule for briefing the remaining issues "including allocation of attorneys' fees and the cost of the arbitration."

On April 15, 2019, Claimants filed their Motion and Memorandum in Support of Joint and Several Liability, and Allocation of Attorneys' Fees, Costs, and Interests.  Claimants sought

---

[6] The arbitration was delayed by Respondents' contention that the PFA finally decided that only Cecilia was liable for the $856,886 breach of contract award.  I have definitively rejected this contention.  In the PFA, I specifically left open whether the breach of contract award should be imposed on Cecilia only or on Respondents jointly and severally.

fees and costs against Respondents under the several legal constructs, including the doctrine of equitable estoppel.

On May 20, 2019, Respondents filed their Opposition to Claimants' Motion for Joint and Several Liability, and Allocation of Attorneys' Fees, Costs, and Interest.  Respondents briefed the issue of equitable estoppel, arguing that it does not apply.

On April 15, 2019, Mr. Robinson and Morgan Creek filed a Motion for Attorneys' Fees and Costs.  They moved "for an award of attorneys' fees and costs as prevailing parties under the arbitration clause of the Asset Purchase Agreement ("APA")."  They sought an award of $643,160.50 in attorneys' fees and $32,700.50 in arbitration costs assessed by JAMS.

On May 18, 2019, I issued Scheduling Order 26.  The Order recites that on April 15, 2019, Respondents Robinson and Morgan Creek had filed a Motion for Attorneys' Fees and Costs.  Claimants objected to the motion on the ground that it was not authorized by Scheduling Order 25.  Nevertheless, I permitted Mr. Robinson and Morgan Creek to file the motion.  I stated: "They are parties to the arbitration, Claimants seek attorneys' fees and costs from them, and it is proper that all claims for attorneys' fees and costs should be decided at one hearing."   Scheduling Order 26 set a briefing schedule that included an opposition and a reply.

On September 17, 2019, I issued Scheduling Order 27.  The order followed a hearing held on August 27, 2019 by telephone conference call.  In the Order, I ruled that the PFA left open for later resolution the potential joint and several liability of Respondents Robinson, Morgan Creek, and Good Stuff for breach of contract, attorneys' fees and other litigation costs, and the cost of the arbitration.  I directed counsel to meet and confer and submit a joint list of issues to be decided and a discovery plan.

6

On September 25, 2019, the parties filed a Joint Status Report.  They could not agree on the issues to be decided.

Claimants' list included:

(1)  The appropriateness of awarding attorneys' fees and costs (aside from payments to JAMS already awarded) to Claimants;

(2)  The amount of the award of attorneys' fees and costs to Claimants;

(3)  The appropriateness under Maryland law of awarding prejudgment interest on the award to claimants;

(4)  The appropriateness under Maryland law of awarding post-judgment interest on the award to Claimants;

(5)  Whether joint and several liability should be imposed on all Respondents, including Mr. Robinson and Morgan Creek, and specifically

   a.  whether the APA may be enforced against Respondents, Mr. Robinson and Morgan Creek through equitable estoppel; and

   b.  whether the APA may be enforced against Respondents, Mr. Robinson and Morgan Creek through piercing the corporate veil.

Respondents' list included:

Only the following issues remain to be addressed in this arbitration, according to the Partial Final Award (Corrected):

(1)  The appropriateness under Maryland law of awarding post-judgment interest to Claimants, the amount of such an award, and whether any post-judgment interest should be imposed on Cecilia only or on Respondents jointly and severally.

(2)  The appropriateness under the APA and Maryland law of awarding attorneys' fees to Claimants, the amount of such an award, and whether to award the costs of the arbitration apart from payment to JAMS and whether any attorney-fee award should be imposed on Cecilia only or on Respondents jointly and severally.

Respondents maintain their position that the Partial Final Award (Corrected) resolved breach-of-contract liability as to all Respondents: Cecilia, Good Stuff, Mr. Robinson, and Morgan Creek.  In other words, the only issues remaining to be addressed before the Arbitrator are those which were explicitly reserved in the Partial Final Award (Corrected), as listed above.

7

Additionally, should this arbitration proceed improperly on the issues of joint and several liability or corporate veil-piercing for Respondents Mr. Robinson and Morgan Creek, the issues of attorneys' fees, costs, and interest cannot be resolved until after liability has been resolved.

On October 22, 2019, I issued Scheduling Order 28. The Order recites that I held a hearing by telephone conference call on September 30, 2019. It also recites that following the hearing the parties submitted letters dated October 14, 2019 and October 18, 2019. The Order specifies the issues remaining to be decided and directs counsel to review the list for completeness.[7] The "**ISSUES REMAINING**" are stated as follows:

**Breach of Contract Damages**

In the Partial Final Award (Corrected), I awarded judgment against Cecilia LLC in the amount of $856,866 for breach of contract. Remaining for decision is whether one or more of the other Respondents are jointly and severally liable in that amount for breach of contract.

**Pre and Post-Judgment Interest on the Breach of Contract Award.**

Whether, under Maryland law, I should award pre and post-judgment interest on the $856,866 breach of contract award against Cecilia LLC and any other Respondent I might find jointly and severally liable for breach of contract.

**Costs of the Arbitration as Administered by JAMS**

I imposed the costs of the arbitration against Cecilia LLC. At the time the Partial Final Award (Corrected) was issued, those costs totaled $130,802.02. When I issue the Final Award, the costs will be brought current and awarded against Cecilia LLC. Remaining for

---

[7] "This scheduling order lists the remaining issues to be decided, subject to review by counsel for completeness."

decision is whether arbitration costs should be awarded jointly and severally against one or more of the other Respondents.[8]

**Attorneys' Fees and Other Litigation Costs**

Remaining for decision is whether to award attorneys' fees and other litigation costs to one or more of the parties against one or more of the adverse parties.  Claimants have requested an award against Respondents and vice versa.  Once I decide the issue of entitlement to fees and costs, I will decide the amount of the award.[9]

In Scheduling Order 28, therefore, I recited that "Claimants have requested an award against Respondents and vice versa."  I stated the two-step process for determining the award of attorneys' fees and costs: "Once I decide the issue of entitlement to fees and costs, I will decide the amount of the award."

In Scheduling Order 28, I observed that Claimants sought to hold all Respondents liable jointly and severally for any award imposed against Cecilia, LLC through the doctrines of equitable estoppel, paramount equity, and by piercing the corporate veil of Cecilia, LLC.  I noted that Claimants were willing to proceed solely on the doctrine of equitable estoppel provided that certain limitations on discovery and the hearing could be agreed upon.

Scheduling Order 28 concludes by directing the parties to do the following: "The parties are directed to meet and confer concerning limited discovery, followed by limited briefing, followed by oral argument (preferably by telephone conference call) on the open issues.  Meet

---

[8] Order 28 states at footnote 2: "Also open is whether any award would bear post-judgment interest."
[9]Order 28 states at footnote 3: "Deciding the amount of the award will require discovery and briefing.  Also open is whether any award would bear post-judgment interest."

and confer by October 28, 2019 and submit your joint status report by October 30, 2019.  The

joint status report should also address whether the open issues are correctly stated herein."

On October 30, 2019, the Parties submitted a Joint Status Report Pursuant to Scheduling

Order 28.  Claimants took the position that "no further discovery was needed concerning

equitable estoppel." They also argued that no additional briefing was required because "the

issue of equitable estoppel has already been fully briefed." Respondents, on the other hand,

sought additional discovery.  They also sought additional briefing on Claimants' allegedly "new"

theory for equitable estoppel based on the motion by Mr. Robinson and Morgan Creek for

Attorneys' fees.  Respondents contended that, "further briefing would be required because

Respondents have not had an opportunity to respond to this theory."  Respondents also sought

the opportunity for an evidentiary hearing

On November 11, 2019, I issued Scheduling Order 29. It observed that Claimants, to

spare discovery costs, were dropping the issues of paramount equity and piercing the corporate

veil and sought no additional discovery.  The order permitted Respondents to take discovery on

the issue of equitable estoppel "so that the record will be satisfactory to both sides." The

pertinent section of the Order provides:

> My understanding is that Respondents wish to offer testimony through affidavits or
> deposition testimony from:
>
> (i)     Mr. Robinson and/or a Morgan Creek representative concerning his/its
>         intent in seeking attorneys' fees in this arbitration,
>
> (ii)    Mr. Blum, Respondents' expert, concerning the scope of his
>         representation,
>
> (iii)   Additional deposition testimony of Mr. Azod to determine the nature and
>         timing of Claimants' knowledge of the facts concerning their equitable
>         estoppel theory.

The order concludes by addressing the scope of the upcoming hearing on the remaining

Issues: "I will schedule oral argument and a hearing on the remaining issues.  The proceeding

will be held by videoconference.  I am open to testimony, but the testimony will be brief."

Following Scheduling Order 29, counsel submitted letters on various matters.  In a letter

of November 15, 2019, Respondents opposed Claimants' request for "production of bank

records of Cecilia, LLC and Good Stuff, LLC through November of 2019."  Respondents argued

that the records were irrelevant because, "Claimants' equitable estoppel theory concerns the

conduct of only Mr. Robinson and Morgan Creek during the course of the arbitration."

Respondents also requested leave to submit an additional brief on equitable estoppel to

address what they characterized as "Claimants' new theory of equitable estoppel as it relates to

the motion for attorneys' fees filed by Mr. Robinson and Morgan Creek."[10]

In a responsive letter of November 18, 2019, Claimants' counsel disagreed that that they

had belatedly advanced a new theory of equitable estoppel.  In support, they pointed to their

opening Motion for Joint and Several Liability filed on April 15, 2020.[11]  In that motion,

Claimants argued that Mr. Robinson was equitably estopped from avoiding liability for breach

of the APA because, *inter alia,* his counter-claim sought attorneys' fees and costs under the

APA's cost-shifting provision.  The pertinent passage reads:

> Mr. Robinson brought counter-claims in his personal capacity against the Claimants
> based on the APA, including counter-claimants for breach of the APA.  **He also sought
> attorneys' fees and costs pursuant to the APA's cost-shifting provision.**  As a result,

---

[10] The motion referred to is the Motion by Respondents James G. Robinson and Morgan Creek Productions, Inc. for Attorneys' Fees and Costs, filed on April 15, 2019.

[11] Claimants' Motion for Joint and Several Liability, April 15, 2019, at p. 12.

Respondent Robinson is equitably estopped from now avoiding liability for breach of the same agreement.[12] (emphasis in original)

Claimants objected to further briefing, arguing: "Respondents already have had ample opportunity to respond to Claimants' position in their opposition" and "Respondents should not be granted an opportunity to brief these issues yet again…."

On November 18, 2019, I issued Scheduling Order 30. That order permitted Respondents to file an additional brief addressing equitable estoppel and to use their page limit (17 pages, double spaced) "as they see fit." I ruled: "The briefs will be limited to the issue of equitable estoppel, but I will not limit the subject matter to new evidence produced in the discovery yet to be conducted. Counsel are at liberty to use their page limit as they see fit."

On February 4, 2020, I issued Scheduling Order 31. I received into evidence an Affidavit of James G. Robinson, in which he explained why he was requesting an award of attorneys' fees and non-JAMS costs under the APA, although he was not a personal signatory to that contract. He stated that it was fair for him to recoup at least part of his fees and costs because he was the prevailing party under the APA. The order also directed counsel to advise me whether either side wished to offer testimony at the hearing.

On February 13, 2020, I issued Scheduling Order 32. It memorialized the parties' decision not to offer live testimony at the upcoming hearing. It granted leave to both sides to file additional briefs (5 pages, double spaced) on the equitable estoppel issue.

On March 26, 2020, the hearing took place by conference call.

---

[12] According to Claimants, the motion for attorneys' fees and costs filed by Mr. Robinson and Morgan Creek was evidence that supported the estoppel claim they made on April 15, 2019.

On March 26, 2020, I issued Scheduling Order 34, which granted Mr. Heather's request to submit a 7-page brief addressing the equitable estoppel cases cited by claimants in their brief of March 6, 2020.

On May 15, 2020, after receiving Respondents' additional brief on equitable estoppel, I issued the Interim Award.

**FINDINGS**

1) I find that the process for allocating attorneys' fees, the cost of the arbitration, and other litigation costs was to be decided pursuant to the two-step process described above. First, I would decide the parties against whom liability would be imposed. Second, I would decide the amount of fees and costs to be awarded. The first step was to be accomplished pursuant to the hearing that took place on March 26, 2020. The second step, determining the amount to be awarded, was to follow. This was my understanding. This was the understanding of Claimants' counsel. It should have been Respondents' understanding.

2) I reject the argument that I agreed to decide the issue of the joint and several liability of Mr. Robinson and Morgan Creek in separate phases. Under Respondents' theory, the first phase would determine whether, through equitable estoppel, Mr. Robinson and Morgan Creek, were liable, jointly with Cecilia, for breach of contract damages. Following additional briefing and, perhaps discovery, the second phase would determine whether, through equitable estoppel, Mr. Robinson and Morgan Creek were jointly liable for attorneys' fees, the cost of the arbitration, and other litigation costs. I reject this argument.

13

3.  The issue of equitable estoppel was briefed by the parties through eleven (11) separate filings.[13]  I permitted Respondents to file supplemental briefs of seventeen (17), five (5), and seven (7) pages on the issue of equitable estoppel.  Respondents had a full and fair opportunity to brief the issue.

4.  I granted Respondents leave to take discovery on the equitable estoppel issue. Respondents had a full and fair opportunity to take discovery on the issue.

5.  I granted Respondents leave to introduce evidence at the hearing on equitable estoppel.  Respondents had a full and fair opportunity to introduce evidence on the issue.

6.  Scheduling Order 28 clearly identifies pre-and post judgement interest as issues that remained to be decided.  It lists as an issue: "Whether, under Maryland law, I should award pre and post-judgment interest on the $856,866 breach of contract award against Cecilia LLC and any other Respondent I might find jointly and severally liable for breach of contract."  The Order further states at footnotes 2 and 3: "Also open is whether any award would bear post-judgment interest" and "Deciding the amount of the award will require discovery and briefing. Also open is whether any award would bear post-judgment interest."  In their briefs, Claimants addressed both prejudgment and post-judgment interest.  Based on this record, I reject Respondents' contention that they were not given notice and an opportunity to be heard on the issues of prejudgment and/or post judgment interest.

7.  Based on these findings, I reject Respondents' contentions that: "[i]n the Interim Award of May 15, 2020, the Arbitrator prematurely and inconsistently with his prior rulings , ruled on issues regarding (1) whether to hold Respondents *other than Cecilia* jointly and

---

[13] Counting Claimants' power point presentation at the hearing.

severally liable for an award of attorneys' fees and costs, and (2) whether an award of prejudgment interest and/or post judgment interest is warranted in this matter—despite the fact that the parties did not have an opportunity to submit briefs regarding these issues,  or be heard on these issues…."  (emphasis in original)

6.  Based on these findings, I reject the contention that the Interim Award of May 15, 2020 is incorrect. I deny the request to "correct" it.

7.  I will, however, treat Respondents' request for correction as a motion to reconsider. Respondents contend that they failed to make all of their arguments.  I will give them an opportunity to make them.  If they persuade me to change my mind, I will do so.

8.  Respondents' brief (15-page limit, double spaced) is due to by **June 17, 2020**.

9.  Claimants' response (15-page limit, double spaced) is due by **July 1, 2020**.

10.  Respondents' reply (5-page limit, double spaced) is due by **July 8, 2020**.

11.  After I have received the briefs, I will decide whether oral argument is warranted.

12.  There will be no additional discovery.

13.  Claimants should not file their fee and cost Petition until after I have decided the motion to reconsider.


The above is hereby **so Ordered this 3rd day of June 2020**.



_/s/ Benson Everett Legg_
Judge Benson Everett Legg (ret.)

## PROOF OF SERVICE BY E-Mail

Re: Azod, Armin, et al. vs. Robinson, James G., et al.
Reference No. 1415013632

I, Teresa Menendez, not a party to the within action, hereby declare that on June 03, 2020, I served the attached Scheduling Order 35 on the parties in the within action by electronic mail at Washington, DISTRICT OF COLUMBIA, addressed as follows:

Alan S. Gutman Esq.
John F. Juenger Esq.
Gutman Law
433 N. Camden Dr.
Suite 960
Beverly Hills, CA   90210
Phone: 310-385-0700
alangutman@gutmanlaw.com
jjuenger@gutmanlaw.com
   Parties Represented:
   Cecelia, LLC
   Good Stuff, LLC
   James G. Robinson
   Morgan Creek Productions, Inc

Alfredo P. Perez de Alejo Esq.
Steffin, Azod LLP
1801 Century Park East
24th Floor
Los Angeles, CA   90067
Phone: 310-980-5781
alfredo@steffinazod.com
   Parties Represented:
   Armin Azod
   Dr. Dong Zhang
   Dr. Ramez Elgammal
   Dr. Shantanu Sharma
   Peter John

Armin Azod Esq.
David M. Arbogast Esq.
Amanda Fleming Esq.
Steffin, Azod LLP
1801 Century Park East
24th Floor
Los Angeles, CA   90067
Phone: 310-737-8529
armin.azod@usaiplaw.com
david@usaiplaw.com
amanda@usaiplaw.com
   Parties Represented:
   Armin Azod
   Dr. Dong Zhang
   Dr. Ramez Elgammal
   Dr. Shantanu Sharma
   Peter John

Mr. Aaron Perez-Daple
Justin Heather Esq.
Steffin, Azod LLP
1801 Century Park East
24th Floor
Los Angeles, CA   90067
Phone: 312-675-6150
aaron@steffinazod.com
justin@usaiplaw.com
   Parties Represented:
   Armin Azod
   Dr. Dong Zhang
   Dr. Ramez Elgammal
   Dr. Shantanu Sharma
   Peter John

Patricia L. Glaser Esq.
Steven P. Basileo Esq.
Fred D. Heather Esq.
Glaser Weil Fink, et al.
10250 Constellation Blvd.
19th Floor
Los Angeles, CA   90067
Phone: 310-553-3000
pglaser@glaserweil.com
sbasileo@glaserweil.com
fheather@glaserweil.com
   Parties Represented:
   Cecelia, LLC
   Good Stuff, LLC
   James G. Robinson
   Morgan Creek Productions, Inc

Olivia Weiss Esq.
Glaser Weil Fink, et al.
10250 Constellation Blvd.
19th Floor
Los Angeles, CA   90067
Phone: 310-553-3000
oweiss@glaserweil.com
   Parties Represented:
   Cecelia, LLC
   Good Stuff, LLC
   James G. Robinson
   Morgan Creek Productions, Inc

      I declare under penalty of perjury the foregoing to be true and correct. Executed at Washington,

DISTRICT OF COLUMBIA on June 03, 2020.

/s/ Teresa Menendez
Teresa Menendez
JAMS
tmenendez@jamsadr.com